PATIENCE DRAKE ROGGENSACK, J.
¶ 1. This is a review of a published opinion of the court of appeals[1] that affirmed in part and reversed in part the decision of the circuit court for Milwaukee County.[2] The questions now before us arise from claims by Bostco LLC and Parisian, Inc. (hereinafter Bostco), alleging that Milwaukee Metropolitan Sewerage District's (MMSD) negligent operation and maintenance of a sewerage tunnel (the Deep Tunnel) beneath Bostco's property resulted in excessive groundwater seepage into the Deep Tunnel, thereby causing significant damage to Bostco's buildings. Bostco sought money damages, as well as equitable relief.
¶ 2. The parties raise five issues, and we affirm the court of appeals on all but one of the issues. First, MMSD claims in its cross-appeal that it is entitled to immunity for its construction and maintenance of the *565 Deep Tunnel, under Wis. Stat. § 893.80(4).[3] Second, if immunity is not accorded, Bostco claims that the court of appeals erred when it reversed the circuit court's award of equitable relief for Bostco, ordering MMSD to abate the excessive seepage of groundwater into the Deep Tunnel. Third, Bostco claims that the damage cap in § 893.80(3), which caps the damages recoverable in an action against governmental entities at $50,000, violates equal protection, both facially and as applied to Bostco's specific claims. Additionally, Bostco contends that the damage cap does not apply to continuing nuisances. Fourth, Bostco claims that MMSD's operation and maintenance of the Deep Tunnel constituted an unconstitutional taking of the groundwater beneath Bostco's property. Fifth, MMSD argues that Bostco's claim is barred by the notice of claim provision of § 893.80(1) (2005-06).
¶ 3. First, we conclude that MMSD is not entitled to immunity. Once MMSD had notice that the private nuisance it negligently maintained was causing significant harm, immunity under Wis. Stat. § 893.80(4) was not available for MMSD. The proper immunity analysis in this case rests on our holding in Milwaukee Metropolitan Sewerage District v. City of Milwaukee (City of Milwaukee), 2005 WI 8, 277 Wis. 2d 635, ¶ 59, 691 N.W.2d 658, that "[wjhether immunity exists for nuisance founded on negligence depends upon the character of the negligent acts." Where the negligent act was undertaken pursuant to one of those functions set forth in § 893.80(4) — that is, legislative, quasi-legislative, ju *566 dicial or quasi-judicial functions — immunity may apply. See id.-, see also § 893.80(4).
¶ 4. Here, Bostco's nuisance claim is grounded in MMSD's negligent maintenance of its Deep Tunnel, which maintenance constituted a continuing private nuisance. See Physicians Plus Ins. Corp. v. Midwest Mut. Ins. Co., 2002 WI 80, ¶¶ 2-3, 254 Wis. 2d 77, 646 N.W.2d 777 (explaining that when all the elements of nuisance are proved and the municipal entity has notice that the nuisance was causing significant harm, the entity has a duty to abate). Because MMSD's maintenance of the continuing private nuisance is not a legislative, quasi-legislative, judicial or quasi-judicial function, MMSD is not entitled to immunity. See Hillcrest Golf & Country Club v. City of Altoona, 135 Wis. 2d 431, 439-40, 400 N.W.2d 493 (Ct. App. 1986) (explaining that the "creation and maintenance of private nuisances are simply not recognized as legislative acts subject to protection under sec. 893.80(4)"); see also Welch v. City of Appleton, 2003 WI App 133, ¶ 8, 265 Wis. 2d 688, 666 N.W.2d 511 (explaining that "no statutory or common law immunity doctrine empowers a public body to maintain a private nuisance"); Menick v. City of Menasha, 200 Wis. 2d 737, 745, 547 N.W.2d 778 (Ct. App. 1996) (concluding "there is no discretion as to maintaining the [sewer] system so as not to cause injury"); Wis. Stat. §§ 844.01(1) and 844.20(2) (providing statutory procedure for seeking abatement of private nuisances).[4] The court of appeals' determination that MMSD is not entitled to immunity is therefore affirmed.
*567 ¶ 5. Because MMSD does not have immunity for its negligent maintenance of the Deep Tunnel, we also conclude as follows: On the second issue, we conclude that Wis. Stat. § 893.80(3)-(5) do not abrogate MMSD's duty to abate the private nuisance that MMSD caused by its negligent maintenance of the Deep Tunnel, after MMSD had notice that the nuisance was a cause of significant harm. Therefore, we reverse the court of appeals' denial of the equitable relief of abatement.
¶ 6. Third, we conclude that the monetary damage cap in Wis. Stat. § 893.80(3) does not violate equal protection, either facially or as applied to Bostco. Moreover, the nature of Bostco's claim as a continuing nuisance does not render § 893.80(3)'s monetary damage cap inapplicable. Accordingly, we affirm the court of appeals' conclusion that the circuit court properly reduced Bostco's monetary damages to $100,000.
¶ 7. Fourth, with regard to Bostco's inverse condemnation claim, we conclude that Bostco forfeited the argument that it makes before this court, and we therefore affirm the court of appeals on this issue.
¶ 8. Fifth, we conclude that Bostco substantially complied with the notice of claim provisions under Wis. Stat. § 893.80(1) (2005-06), and that MMSD therefore had sufficient notice under those provisions. Accordingly, we affirm the court of appeals on that issue as well.
¶ 9. Because neither Wis. Stat. § 893.80(4) nor (3) abrogates MMSD's duty to abate this private nuisance, we reverse the court of appeals' decision in part, affirm that decision in part, and remand to the circuit court for further proceedings consistent with this opinion. In particular, we reverse the court of appeals' reversal of the circuit court's order for abatement, in part. That is, while we affirm the court of appeals on all other issues, *568 we reverse that court's decision that Bostco was not entitled to equitable relief in the form of an order for abatement. Therefore, we affirm the circuit court decision that abatement is required, and we remand this matter to the circuit court. Upon remand, a hearing may be held to establish whether an alternate method will abate the continuing private nuisance MMSD maintains or whether lining the Deep Tunnel with concrete is required for abatement.
I. BACKGROUND
¶ 10. This case arises out of MMSD's maintenance of the Milwaukee Deep Tunnel, which was constructed in the early 1990s to collect and store both storm water runoff and sewage until the Deep Tunnel's collections could be transported to Milwaukee's sewage treatment plant.
¶ 11. Boston Store is located in downtown Milwaukee, one block west of the Deep Tunnel's North Shore segment. First erected in the 19th century, Boston Store consists of five interconnected buildings that rest upon wood pile foundations that were driven into the ground to support the buildings' columns. At the time of construction, the pilings were below the water table and were fully saturated, thereby preventing their deterioration.
¶ 12. Over time, however, the water enclosing the pilings was drawn down, and the Boston Store buildings began to suffer substantial structural damage. On November 16, 2004, Bostco filed the amended complaint in this case, alleging that MMSD's operation and maintenance of the Deep Tunnel caused the drawdown of the water that led to the deterioration of the wood pilings underlying Bostco's buildings. Bostco's claims *569 for relief were based on theories of common law negligence, continuing private nuisance, inverse condemnation and violations of Wis. Stat. § 101.111, setting forth safety standards for excavation projects. Bostco sought equitable relief to abate the nuisance, as well as damages and expenses.
¶ 13. The amended complaint gave rise to numerous motions that resulted in dismissals of some of Bostco's claims. Eventually two common law claims were tried to a jury: negligence and private nuisance.
¶ 14. The jury found that MMSD was negligent in its maintenance of the Deep Tunnel near Bostco's building,[5] and that MMSD's negligence was a cause of Bostco's injury.[6] The jury awarded Bostco $3,000,000 for past damages and $6,000,000 for future damages.[7] The jury also found that Bostco was at fault for 30 percent of the damages, thereby reducing the $9,000,000 award to $6.3 million.[8]
¶ 15. In regard to Bostco's nuisance claim, the jury found that the negligent manner in which MMSD maintained the Deep Tunnel interfered with Bostco's use and enjoyment of its property.[9] The jury found that MMSD could abate the interference by reasonable *570 means and at a reasonable cost.[10] However, the jury also found that the interference did not result in "significant harm" to Bostco.[11]
¶ 16. On post-verdict motions,[12] the circuit court denied Bostco's motion asking the court to find that over $2 million in damages constituted "significant harm" for purposes of Bostco's nuisance claim. Additionally, MMSD sought judgment notwithstanding the verdict, on the ground that MMSD was protected by governmental immunity. The circuit court denied MMSD's motion; however, the court agreed with MMSD that the $50,000 damages cap in Wis. Stat. § 893.80(3) applied, and reduced the jury's negligence verdict from $6.3 million to $100,000 ($50,000 each for Bostco and Parisian). After the damage cap had been applied, Bostco reasserted its claim for equitable relief, which the circuit court had held in abeyance pending the determination of damages in the jury trial. Specifically, Bostco claimed that a $100,000 damage award on $6.3 million of damages constituted an inadequate remedy at law. The circuit court granted Bostco's prayer for equitable relief and ordered MMSD to abate the nuisance caused by MMSD's maintenance of the Deep Tunnel.[13]
*571 ¶ 17. Bostco appealed and MMSD cross-appealed. Bostco argued that the circuit court erred when it refused to change the jury's finding that Bostco did not suffer "significant harm" as to its nuisance claim, as well as the court's summary judgment dismissing Bostco's inverse condemnation claim. On cross-appeal, MMSD argued that the circuit court erred (1) by failing to hold that MMSD's operation and maintenance of the Deep Tunnel were shielded by governmental immunity, (2) by granting Bostco's request for abatement, and (3) by not dismissing Bostco's complaint for failing to comply with the notice of claim provisions of Wis. Stat. § 893.80(1) (2005-06).[14]
¶ 18. With regard to Bostco's nuisance claim, the court of appeals concluded that the circuit court erred in declining to reverse the jury's finding that Bostco did not suffer "significant harm," and that, as a matter of law, suffering more than $2 million in past damages constituted significant harm. Therefore, the court concluded, Bostco proved its claim for private nuisance. Bostco LLC v. Milwaukee Metro. Sewerage Dist. (Bostco), 2011 WI App 76, ¶¶ 92-104, 334 Wis. 2d 620, 800 N.W.2d 518. Additionally, although the court of appeals concluded that MMSD was not entitled to immunity under Wis. Stat. § 893.80(4), the court reversed the circuit court's order for abatement, because it concluded that, since § 893.80(3) capped Bostco's recoverable damages at $50,000 per claimant, § 893.80(3) and (5) precluded such equitable relief. Id., ¶¶ 105-07, 123-37. Also, the court concluded that the *572 damage cap under § 893.80(3) did not violate equal protection, either on its face or as applied to Bostco, id., ¶¶ 39-60, and that the cap applied to Bostco's continuing nuisance claim, id., ¶ 107.
¶ 19. The court of appeals also affirmed the circuit court's summary judgment dismissing Bostco's inverse condemnation claim, holding that Bostco had failed to allege facts that could show that MMSD either physically occupied Bostco's property or that MMSD deprived Bostco of all or substantially all of the beneficial use of its property.[15] Id., ¶¶ 110-13. Additionally, the court of appeals rejected MMSD's claim that Bostco had failed to comply with the notice of claim provision under Wis. Stat. § 893.80(1) (2005-06), and deemed that Bostco's notice was sufficient. Id., ¶¶ 85-91.
¶ 20. Bostco petitioned for review, and MMSD cross-petitioned for review. We granted both petitions.
II. DISCUSSION
A. Standard of Review
¶ 21. Whether MMSD is immune from a claim for abatement of the private nuisance it negligently maintained, which was a cause of significant harm and of which it had notice, when MMSD could do so by reasonable means at a reasonable cost, is a question of law for our independent review. See City of Milwaukee, 277 Wis. 2d 635, ¶ 56.
*573 ¶ 22. This case also requires us to interpret and apply Wis. Stat. § 893.80. Statutory interpretation and application present questions of law that we review independently, while benefitting from previous discussions of the court of appeals and the circuit court. Richards v. Badger Mut. Ins. Co., 2008 WI 52, ¶ 14, 309 Wis. 2d 541, 749 N.W.2d 581. With regard to the circuit court’s decision to grant equitable relief and order abatement, we review that decision for an erroneous exercise of discretion. Forest Cnty. v. Goode, 215 Wis. 2d 218, 225, 572 N.W.2d 131 (Ct. App. 1997).
¶ 23. Additionally, Bostco asks this court to review the circuit court's summary judgment of dismissal of its inverse condemnation/takings claim. Rather than applying the traditional summary judgment methodology, however, we decline to review that claim because the alleged taking as presented to us is materially different than the taking alleged in the circuit court action. See Vill. of Trempealeau v. Mikrut, 2004 WI 79, ¶ 15, 273 Wis. 2d 76, 681 N.W.2d 190. Accordingly, we conclude that Bostco has forfeited its new claim, and we therefore affirm the court of appeals on this issue.
¶ 24. Bostco also claims that the application of the statutory damages cap under Wis. Stat. § 893.80(3) violates the equal protection clause of the Wisconsin Constitution. Whether a statute's limitation violates equal protection presents a question of law for our independent review. See State v. West, 2011 WI 83, ¶ 22, 336 Wis. 2d 578, 800 N.W.2d 929.
B. Discussion's Structure
¶ 25. Two competing concepts underlie this controversy: one appurtenant to abating private nui *574 sanees and the other appurtenant to statutory immunity. One concept requires an understanding of the scope of the duty to abate a private nuisance that a municipal entity negligently maintained, which is a cause of significant harm, and of which the municipal entity had notice.[16] The other concept requires consideration of whether a municipal entity, here MMSD, has statutory immunity pursuant to Wis. Stat. § 893.80, from a claim for abatement based on the entity's negligent maintenance of a private nuisance. These two concepts are intertwined in the matter now before us.
¶ 26. In order to address these competing contentions, it is necessary to fully understand the claim that Bostco proved, i.e., that MMSD negligently maintained a continuing private nuisance that was a cause of significant harm and of which MMSD had notice. Given this posture, our task is to apply the law that bears on the obligation to abate a nuisance, as it has existed for more than 100 years. We interpret the governmental immunity provisions of Wis. Stat. § 893.80 in light of the common law duty to abate negligently maintained private nuisances and statutory provisions such as Wis. Stat. § 844.01 and Wis. Stat. § 844.17 that specifically speak to abatement of private nuisances.
¶ 27. After addressing those issues, we briefly address the remaining issues. These include (1) Bostco's claim that Wis. Stat. § 893.80(3)'s damage cap violates equal protection; (2) Bostco's inverse condemnation claim; and (3) MMSD's challenge to Bostco's notice of claim under § 893.80(1) (2005-06).
*575 C. Nuisance
1. General principles
¶ 28. The tort of nuisance is grounded in a condition or activity that unduly interferes with a public right or with the use and enjoyment of private property. Physicians Plus, 254 Wis. 2d 77, ¶ 21 n.14. There are two broad categories of nuisance that derive their distinctions from the types of rights or interests invaded. City of Milwaukee, 277 Wis. 2d 635, ¶ 24. These broad tort categories are known as public nuisance and private nuisance. Restatement (Second) of Torts, Introductory Note to §§ 821-49 (1979); see also Wis. Stat. ch. 844. It is the type of harm suffered or interest invaded that determines whether the nuisance is a public or a private nuisance. City of Milwaukee, 277 Wis. 2d 635, ¶ 26.
¶ 29. A public nuisance involves the impingement of public rights, rights that are common to all members of the public. Id., ¶ 28. In order to recover for a public nuisance, an individual must have suffered harm of a kind different from other members of the public who exercised that common right. Restatement (Second) of Torts, § 821C.
¶ 30. A private nuisance is a condition that harms or interferes with a private interest. Id., § 821 A. We have accepted the Restatement (Second) of Torts' characterization of private nuisance as "a nontrespassory invasion of another's interest in the private use and enjoyment of land." City of Milwaukee, 277 Wis. 2d 635, ¶ 25 n.4 (citing Vogel v. Grant- *576 Lafayette Elec. Coop., 201 Wis. 2d 416, 423, 548 N.W.2d 829 (1996) and Prah v. Maretti, 108 Wis. 2d 223, 231, 321 N.W.2d 182 (1982)); see Restatement (Second) of Torts, § 821D. There is no dispute that the nuisance at issue in this case is a private nuisance.
¶ 31. Wisconsin law employs the following directive for those seeking to establish liability for a private nuisance:
One is subject to liability for a private nuisance if, but only if, his conduct is a legal cause of an invasion of another's interest in the private use and enjoyment of land, and the invasion is either
(a) [IJntentional and unreasonable, or
(b) [UJnintentional and otherwise actionable under the rules controlling liability for negligent or reckless conduct, or for abnormally dangerous conditions or activities.
Restatement (Second) of Torts, § 822; City of Milwaukee, 277 Wis. 2d 635, ¶ 32. Because a nuisance is a result, of which negligence or intentional conduct may be the cause, liability for a nuisance "is founded on the wrongful act in . . . maintaining [the nuisance]." Physicians Plus, 254 Wis. 2d 77, ¶ 27 (quoting Brown v. Milwaukee Terminal Ry. Co., 199 Wis. 575, 589, 227 N.W. 385 (1929)) (internal quotation marks omitted). Physical occupation of the property of another is not necessary to a nuisance claim. Vogel, 201 Wis. 2d at 426. For example, invasions of noxious odors can rise to the level of a nuisance. Costas v. City of Fond du Lac, 24 Wis. 2d 409, 413, 129 N.W.2d 217 (1964).
*577 ¶ 32. Liability for a private nuisance may be based on either intentional[17] or negligent acts. City of Milwaukee, 277 Wis. 2d 635, ¶ 33. In the case of negligence, as here, liability may be predicated on a party's failure to act when he has a duty to do so. See id., ¶ 34. The duty to act to abate a nuisance arises when one has notice that he is maintaining a nuisance that is a cause of significant harm. See id., ¶ 35.
[Some] cases involve changes to otherwise benign objects that develop over time and become harmful, through no fault of the owner of the object. In these cases, liability is predicated upon the defendant's failure to remove the harmful condition after he has notice of its existence.
Id. (citation omitted).
¶ 33. Furthermore, the duty to abate a nuisance negligently maintained, of which one has notice, is a general common law obligation to which all persons may be subject. See id. at ¶¶ 48, 51; see also Restatement (Second) of Torts §§ 821D, 824; Wis JI — Civil 1922. Moreover, although a municipal entity has a duty to abate a known, private nuisance by one of any number of methods within the entity's discretion, such "discretion" in selecting the particular method by which to abate a nuisance does not eliminate the duty to abate, or make that duty, itself, discretionary. Costas, 24 Wis. 2d at 418 (concluding that "[generally the means whereby [a] nuisance is to be abated is left to the direction of the defendant tort-feasor").
*578 ¶ 34. In Physicians Plus, we fully explored the duty of municipal entities to abate a nuisance caused by negligent maintenance. There, a tree had grown to the extent that it obscured a stop sign at a highway intersection, and that untrimmed growth was alleged to have caused a significant automobile accident. Physicians Plus, 254 Wis. 2d 77, ¶ 1. We explained that because the municipal entities responsible for trimming the tree had at least constructive notice of the sign blockage, they had a duty to abate the nuisance. Id., ¶¶ 2-3. This duty arises from the longstanding rule that generally municipal entities are not shielded from liability for maintaining a private nuisance. See Welch, 265 Wis. 2d 688, ¶ 8.
¶ 35. Similarly, in Costas, we addressed a nuisance that arose out of the operation of a sewage system operated by a municipal entity, the City of Fond du Lac.[18] The City argued that no nuisance claim could lie because the sewage plant was built and operated ac *579 cording to the plan approved by a state agency. Costas, 24 Wis. 2d at 415 (citing Hasslinger v. Vill. of Hartland, 234 Wis. 201, 290 N.W. 647 (1940), as support for this argument). We concluded that the language in Hasslinger, upon which the City relied, was "misleading," and we overruled Hasslinger to the extent that it implied "that operation of the sewage-disposal plant in accordance with specifications and orders and regulations of the state board of health cannot constitute a nuisance." Id. We explained further that "[t]he approval of the method of operation of the sewage-disposal plant is pertinent not to the existence of the nuisance but to the issue of whether it is feasible or practicable to give injunctional [sic] relief for the nuisance." Id. at 416. This principle has been applied in multiple cases before this court and the court of appeals, discussed below. In the case now before us, Bostco has proved that the private nuisance can be abated by reasonable means and at a reasonable cost.[19]
*580 ¶ 36. In Menick, the plaintiff claimed that the operation of a sewage system resulted in the flooding of the plaintiffs basement with raw sewage on two occasions, constituting a private nuisance. Menick, 200 Wis. 2d at 741. As we do here, Menick focused on the duty that pertains to a municipal entity's nuisance-causing actions, which is the duty to abate the nuisance upon notice that the negligently caused condition is a cause of significant harm. The court of appeals concluded that although Menick had failed in her proof of her nuisance claim because she did not offer an expert opinion as to the legal cause of the flooding, the City would not have enjoyed immunity from such an action based on private nuisance. Id. at 744-45.
¶ 37. Factually similar to Menick is the Welch case, in which Welch claimed that flooding that occurred after heavy rainfalls constituted a private nuisance, attributable to the City of Appleton's maintenance of its storm sewer system. Welch, 265 Wis. 2d 688, ¶ 1. The City asserted that it was immune from suit pursuant to Wis. Stat. § 893.80(4). Id., ¶ 5. The court of appeals concluded that, as a matter of law, "no statutory or common law immunity doctrine empowers a public body to maintain a private nuisance."[20] Id., ¶ 8.
¶ 38. The most recent nuisance case is City of Milwaukee, which we decided in 2005. In City of Milwaukee, we reviewed the legal issues surrounding a broken city water main that damaged a section of MMSD's Deep Tunnel. City of Milwaukee, 277 Wis. 2d 635, ¶ 2. There, MMSD alleged both negligence and nuisance, just as Bostco has alleged here, asserting that *581 the City did not properly inspect or maintain its pipeline so as to discover the leakage before the pipeline ruptured. Id., ¶ 3.
¶ 39. After a full discussion of the law relating to nuisance, we concluded that there was a question of fact as to whether the City had notice that its water main was leaking, and that such notice was necessary to show that the City was under a ministerial duty to abate the nuisance by repairing the water pipe before it broke. Id., ¶ 9. We explained:
[T]he City may be liable for its negligence in failing to repair the leaky water main. However, since there exists a material issue of fact as to whether the City had notice of the leaking water main, we cannot determine whether the City was under a ministerial duty to repair its water main prior to the break. Thus, we cannot determine whether the City is immune under § 893.80(4) from liability predicated upon a negligent failure to repair the water main before it burst.

Id.

¶ 40. A careful reading of City of Milwaukee is important to deciding this case because our decision in City of Milwaukee is grounded in a nuisance claim and also because it explains how the duty to abate a nuisance intersects with the concept of a ministerial duty of a municipal entity. We explained,
Since we cannot determine whether the City was on notice that its water main was leaking and could potentially interfere with the use and enjoyment of another's property, we cannot conclude whether its duty to repair the leaking main with reasonable care before it broke was "absolute, certain and imperative," or whether the City's decision not to repair the main before the break was discretionary.
Id., ¶ 62 (citation omitted).
*582 ¶ 41. It follows from our explanation in paragraph 62 of City of Milwaukee, quoted above, that if the City had notice that its water main was leaking before it broke, it had a duty to abate the nuisance by fixing the pipe.[21] The duty to fix the pipe, if the City knew it was leaking, was "absolute, certain and imperative" — in other words, ministerial — even though a particular method of repairing the leak was not "absolute, certain *583 and imperative."[22] This conclusion is supported by Physicians Plus, where we explained that a negligently caused nuisance resulting in significant harm, of which the municipal entity has notice, creates a ministerial duty to abate the nuisance. See Physicians Plus, 254 Wis. 2d 77, ¶ 59 (reaffirming municipal entity's ministerial duty to properly maintain structures installed pursuant to municipal entity's legislative authority).
2. MMSD's nuisance
¶ 42. In this case, Bostco proved that MMSD negligently caused a continuing private nuisance due to the manner in which MMSD chose to maintain the Deep Tunnel.[23] MMSD had notice that excessively siphoning groundwater from around Bostco's building was interfering with Bostco's use and enjoyment of its property by damaging the foundation of the building.
¶ 43. Here, in contrast to the City of Milwaukee case, no further fact-finding is required before concluding that MMSD is under a duty to abate. MMSD knew that excessive siphoning of water into the Deep Tunnel was a cause of significant harm to Bostco's building, and MMSD could have abated the nuisance, i.e., stopped the excessive siphoning, by reasonable means and at a *584 reasonable cost.[24] Accordingly, the circuit court properly concluded that MMSD was required to abate the private nuisance caused by MMSD's negligent maintenance of the Deep Tunnel.[25]
D. Municipal Immunity
¶ 44. In the context of municipal entities, the obligation to abate a known private nuisance is additionally subject to the principles of immunity for governmental entities. We therefore turn to interpreting those statutes relevant to an immunity analysis: Wis. Stat. § 893.80(4) and (3).
*585 ¶ 45. Statutory interpretation requires us to determine the statute's meaning, which is assumed to be expressed in the language chosen by the legislature. Richards, 309 Wis. 2d 541, ¶ 20. If the meaning of the statute is apparent in the plain language, we apply that language. State ex rel. Kalal v. Circuit Court for Dane Cnty., 2004 WI 58, ¶ 45, 271 Wis. 2d 633, 681 N.W.2d 110. We give statutory terms their "common, ordinary, and accepted meaning, except that technical or specially-defined words or phrases are given their technical or special definitional meaning." Id.
¶ 46. A plain meaning analysis may be assisted by consideration of statutory context and structure. See id., ¶ 46. "[T]he statutory context in which a term is used, including the language and structure of surrounding or closely related statutes, is often highly instructive in determining a term's meaning." State v. Soto, 2012 WI 93, ¶ 20, 343 Wis. 2d 43, 817 N.W.2d 848 (citing State v. Jensen, 2010 WI 38, ¶ 15, 324 Wis. 2d 586, 782 N.W.2d 415). The purpose of the legislation also may be useful in ascertaining a statute's meaning. Sheboygan Cnty. Dep't of Health & Human Servs. v. Tanya M.B., 2010 WI 55, ¶ 28, 325 Wis. 2d 524, 785 N.W.2d 369. Furthermore, we are assisted by prior decisions that have examined similar statutory questions. See DeHart v. Wis. Mut. Ins. Co., 2007 WI 91, ¶ 15, 302 Wis. 2d 564, 734 N.W.2d 394. Finally, if the statute was a legislative attempt to follow the rule of law set forth in a particular supreme court decision, a review of that decision also informs our understanding of the statute.
¶ 47. In regard to the immunity question presented herein, initially we are concerned with Wis. Stat. § 893.80(4), which provides in relevant part:
*586 No suit may be brought against any. . . political corporation, governmental subdivision or any agency thereof for the intentional torts of its officers, officials, agents or employees nor may any suit be brought against such corporation, subdivision or agency ... for acts done in the exercise of legislative, quasi-legislative, judicial or quasi-judicial functions.
We begin by noting that § 893.80(4) was intended to codify our decision in Holytz v. City of Milwaukee, 17 Wis. 2d 26, 115 N.W.2d 618 (1962). See Coffey v. City of Milwaukee, 74 Wis. 2d 526, 532, 247 N.W.2d 132 (1976) (recognizing that § 893.80(4)'s indirect predecessor, Wis. Stat. § 331.43 (1963), was intended to codify Holytz)', see also Raisanen v. City of Milwaukee, 35 Wis. 2d 504, 515-16, 151 N.W.2d 129 (1967) (noting § 331.43's intermediate enumeration as Wis. Stat. § 895.43).
¶ 48. As the Legislative Council Report of 1976 also explains:
Prior to 1961 local units of government in Wisconsin were generally immune from tort liability because of the judicial doctrine of governmental immunity.. . . In 1961 the case of Holytz v. Milwaukee (1961), 17 Wis. 2d 26, was decided which abrogated the principal of governmental immunity from tort liability. . . . The opinion did not impose liability on a governmental body in the exercise of its legislative or judicial or quasi-legislative or quasi-judicial functions, and to that extent a part of the immunity doctrine remained intact. ... The general statute concerning the liability of local governmental units for torts [then § 343.80, now § 893.80] was enacted shortly after this decision and in many respects draws from the decision for its content.
Therefore, our interpretation of Wis. Stat. § 893.80(4) is informed by a review of Holytz.
*587 ¶ 49. In Holytz, we explicitly abrogated common law immunity for municipal entities as it existed in 1962. See Holytz, 17 Wis. 2d at 39-41. The abrogation was intended to apply to municipal entity liability for all torts, "whether they be by commission or omission."[26] Id. at 39. The one limitation on our broad abrogation was clearly stated: our decision was "not to be interpreted as imposing liability on a governmental body in the exercise of its legislative or judicial or quasi-legislative or quasi-judicial functions." Id. at 40. The second sentence of Wis. Stat. § 893.80(4) mirrors this limitation of municipal entity liability.[27]
¶ 50. The rule as to municipal entity liability has been repeated many times since our decision in Holytz and the enactment of Wis. Stat. § 893.80: as to non-state governmental entities, " 'the rule is liability — the exception is immunity.'" Kimps v. Hill, 200 Wis. 2d 1, 10 n.6, 546 N.W.2d 151 (1996) (quoting Holytz, 17 *588 Wis. 2d at 39).[28] See, e.g., Jorgenson v. N. States Power Co., 60 Wis. 2d 29, 37, 208 N.W.2d 323 (1973) (concluding that a city's failure to authorize the temporary removal of a light pole so that it would not injure workers digging next to the pole's base did not constitute an exercise of a legislative or quasi-legislative function); Naker v. Town of Trenton, 62 Wis. 2d 654, 215 N.W.2d 38, aff'd on reh'g, 62 Wis. 2d 654, 660a, 217 N.W.2d 665 (1974) (concluding that a traffic sign, once erected, must be properly maintained or liability may follow).
¶ 51. Furthermore, although a municipal entity escapes liability for its legislative or quasi-legislative decision regarding whether to install a particular system or structure, once the municipal entity makes the decision to install, the entity is under a subsequent ministerial duty[29] to maintain the system or structure in a safe and working order. As we explained in Naker:
*589 Once the decision is made and the sign is erected, the legislative function is terminated and the doctrine of Holytz that imposes liability for want of ordinary care takes over. A sign once erected by legislative action must be properly maintained.
Naker, 62 Wis. 2d at 660a.
¶ 52. As discussed above, in City of Milwaukee, we explained the relationship between municipal immunity under Wis. Stat. § 893.80(4) and the duty to abate a private nuisance. We held that if the City of Milwaukee had a duty to repair the water pipe so that it did not rupture and damage MMSD's tunnel (which duty in turn was dependent upon the City having notice that the pipe was leaking), such duty was ministerial and there would be no immunity under § 893.80(4) for the City's failure to abate the nuisance its leaking pipe had created. City of Milwaukee, 277 Wis. 2d 635, ¶ 62. Therefore, in City of Milwaukee, if the City had notice of the leaking water pipe, the nuisance it was maintaining would require abatement as a non-discretionary, ministerial duty.
¶ 53. In the present case, the court of appeals, in reversing the circuit court's order for abatement, concluded that while Wis. Stat. § 893.80(4) does not provide immunity, § 893.80(3) does not allow parties to obtain equitable relief against governmental entities because doing so would "render the damage cap set forth in Wis. Stat. § 893.80(3) superfluous." Bostco, 334 Wis. 2d 620, ¶ 129. The court of appeals concluded that because § 893.80(3) is silent about equitable relief, when read with § 893.80(5), § 893.80(3) precluded the circuit court's order enjoining MMSD from continuing *590 to injure Bostco. Id., ¶¶ 130-31. To test the court of appeals decision, we turn to the language of § 893.80(3), and construe the statute according to its plain meaning.
¶ 54. Statutory interpretation begins with the words chosen by the legislature. Wisconsin Stat. § 893.80(3) provides in relevant part:
Except as provided in this subsection, the amount recoverable by any person for any damages, injuries or death in any action founded on tort against any.. . governmental subdivision ... shall not exceed $50,000.
(Emphasis added).
¶ 55. Wisconsin Stat. § 893.80(3) addresses "the amount recoverable by any person for any damages, injuries or death." The statute limits the "amount recoverable" "by any person" to $50,000. The words chosen by the legislature should be given their plain meaning. Kalal, 271 Wis. 2d 633, ¶ 45. An order for abatement does not entitle "any person" to "recover" any "amount." It is a foundational principle of statutory construction that "no word or clause shall be rendered surplusage." Donaldson v. State, 93 Wis. 2d 306, 315, 286 N.W.2d 817 (1980). The court of appeals ignored the phrase, "the amount recoverable by any person"; however, courts are not free to ignore the words or phrases chosen by the legislature. See Brunton v. Nuvell Credit Corp., 2010 WI 50, ¶ 16, 325 Wis. 2d 135, 785 N.W.2d 302.
¶ 56. Also, non-technical words are to be given their ordinary and accepted meanings. Town of LaFayette v. City of Chippewa Falls, 70 Wis. 2d 610, 619, 235 N.W.2d 435 (1975). The phrase, "amount recoverable by any person," is stated in non-technical terminology. In order to give an ordinary and accepted *591 meaning to those terms, we conclude that the statute describes a relationship. That relationship is between any person who is entitled to recover a damage award against a municipal entity and the amount of that monetary liability. Accordingly, we conclude that the plain meaning of Wis. Stat. § 893.80(3) is to limit the dollar amount of recovery to be paid for damages, injuries or death to $50,000 per claimant, but that the plain meaning of that provision has no bearing on the availability of equitable relief such as abatement.
¶ 57. This interpretation is consistent with prior cases interpreting Wis. Stat. § 893.80, such as Harkness v. Palmyra-Eagle School District, 157 Wis. 2d 567, 460 N.W.2d 769 (Ct. App. 1990),[30] in which the court of appeals was asked to consider whether § 893.80(4) should be interpreted to preclude equitable relief. The court held that in regard to Harkness's claim for reinstatement, there was "no authority indicating that [§ 893.80(4)] applies to equitable or injunctive relief' for such a claim; accordingly, § 893.80(4) did not bar Harkness's claim for reinstatement. Id. at 579-80.
¶ 58. Our interpretation of Wis. Stat. § 893.80(3) is consistent with that statement in Harkness, and consistent with the statutory history that we laid out in Anderson v. City of Milwaukee, 208 Wis. 2d 18, 559 N.W.2d 563 (1997). In Anderson, Justice Crooks thoroughly explained the genesis of § 893.80(3), and quoted from our opinion in Holytz:" '[H]enceforward, so far as governmental responsibility for torts is concerned, the *592 rule is liability — the exception is immunity.[1]" Id. at 26 (quoting Holytz, 17 Wis. 2d at 39). Anderson explained the changing dollar amounts that could be recovered as damages, showing that the bill from which § 893.80(3) evolved began with a $10,000 limitation, changed to a $25,000 limitation in a Senate Amendment, and increased to a $50,000 limitation by the Laws of 1981, ch. 63, § 2. Id. at 27 n.9. Throughout these changes, nothing in the legislative history addressed limitations on equitable relief of any type. Without any language in § 893.80(3) to suggest a limitation on equitable relief, we decline to read in any such limitation.
E. Equitable Relief
¶ 59. In the case now before us, the court of appeals attempted to fill the legislature's silence in regard to equitable relief under Wis. Stat. § 893.80(3) by construing § 893.80(5) to create limitations in § 893.80(3) that were not placed there by the legislature. Bostco, 334 Wis. 2d 620, ¶ 130. The court of appeals said that the phrase "shall be exclusive" in § 893.80(5), limits a plaintiffs recovery to those remedies set forth in § 893.80 and because injunctions are not mentioned, they are not available against a municipality. Id. However, there is nothing in either the language or the history of § 893.80 to support the court of appeals' broad limitation of remedies and its conclusion that § 893.80(3) precludes actions in equity.[31] The court of appeals' decision, if affirmed, would have far- *593 reaching effects and would overrule extensive precedent in regard to the authority of courts to enjoin municipal entities.[32]
¶ 60. To obtain injunctive relief, generally one must show that the injunction is necessary to prevent the continuation of significant harm. Pure Milk Prods. Coop. v. Nat'l Farmers Org., 90 Wis. 2d 781, 803, 280 N.W.2d 691 (1979). "The purpose of an injunction is to prevent [future] violations." Id. In that respect, injunctive relief is consistent with the obligation to abate a continuing private nuisance, which obligation is imposed to prevent future harms. See, e.g., Menick, 200 Wis. 2d at 745 (concluding that "there is no discretion as to maintaining the [sewer] system so as not to cause injury to residents").
¶ 61. While the legislature may have authority to limit equitable relief in some circumstances, there is nothing in the language of Wis. Stat. § 893.80(3) to indicate that the legislature sought to do so. When a statute fails to address a particular situation, the remedy for the omission does not lie with the courts. It lies *594 with the legislature. La Crosse Lutheran Hosp. v. La Crosse Cnty., 133 Wis. 2d 335, 338, 395 N.W.2d 612 (Ct. App. 1986).
¶ 62. Both before and after Holytz, when the principles of immunity have been applied to claims against municipal entities for damages, those principles have not been held applicable to claims for injunctive relief against ongoing governmental activities. Perhaps one of the clearest recognitions of this distinction was our statement in Lister v. Board of Regents of the University of Wisconsin System, 72 Wis. 2d 282, 240 N.W.2d 610 (1976). In Lister, we explained that the public policy considerations that have prompted courts to grant substantive immunity for monetary damages do not apply with equal force to actions for declaratory or injunctive relief. Id. at 304; see also Scarpaci v. Milwaukee Cnty., 96 Wis. 2d 663, 691, 292 N.W.2d 816 (1980) (reaffirming that policies that underlie immunity from damages do not apply with equal force to a suit for injunctive relief).
¶ 63. However, in Johnson v. City of Edgerton, 207 Wis. 2d 343, 558 N.W.2d 653 (Ct. App. 1996), the court of appeals seemed to slip away from precedent in regard to injunctive relief against municipal entities, without recognizing that it was making a significant change in the law. Accordingly, Johnson is a concern that must be addressed for a number of reasons. See Willow Creek Ranch, L.L.C. v. Town of Shelby, 2000 WI 56, ¶¶ 75-99, 235 Wis. 2d 409, 611 N.W.2d 693 (Prosser, J., dissenting). First, because the language in Johnson is so broad, it could be interpreted as overruling, sub-silentio, prior decisions of the court of appeals that addressed immunity under Wis. Stat. § 893.80(4), which were, in turn, based on the longstanding avail *595 ability of equitable relief to abate ongoing nuisances. See, e.g., Hillcrest, 135 Wis. 2d at 439-40 (explaining that the "creation and maintenance of private nuisances are simply not recognized as legislative acts subject to protection under sec. 893.80(4)"); see also, Harkness, 157 Wis. 2d 567, 579-80. The court of appeals does not have the power to overrule prior decisions. See Cook v. Cook, 208 Wis. 2d 166, 171, 560 N.W.2d 246 (1997) (concluding that the court of appeals does not have the power to overrule, modify or withdraw language from another court of appeals decision).
¶ 64. Second, the court of appeals' decision in Johnson (upon which we based part of our decision barring injunctive relief in Willow Creek), focused on the wrong language in the municipal immunity statute, Wis. Stat. § 893.80(4), in that the court of appeals emphasized that immunity applied to "any suit." See Johnson, 207 Wis. 2d at 350-52. Instead, the relevant focus when considering whether § 893.80(4) grants immunity is on whether the action sought to be enjoined was within a limited class of municipal decisions that involve the performance of "legislative, quasi-legislative, judicial or quasi-judicial functions." As our cases and those of the court of appeals make clear, a municipal entity's failure to abate a continuing nuisance caused by negligent maintenance of a system or structure, after the municipality has notice, does not constitute a legislative, quasi-legislative, judicial or quasi-judicial act that may be entitled to immunity. See, e.g., Costas, 24 Wis. 2d at 413-19; Hillcrest Golf, 135 Wis. 2d at 439-40.
¶ 65. Third, Johnson relied on the principles of immunity that apply to municipal officers. Johnson, 207 Wis. 2d at 352. However, for municipal officers, the rule is immunity, not liability. See Cords v. Anderson, 80 *596 Wis. 2d 525, 539, 259 N.W.2d 672 (1977). The Johnson decision's reliance on those principles is misplaced because Johnson actually involved a municipal entity, and therefore, the rule is liability, not immunity. Kimps, 200 Wis. 2d at 10 n.6.
¶ 66. Furthermore, the Johnson decision's errors were uncorrected by our decision in Willow Creek. We did note that "[t]o the extent that the language in Johnson suggests other-wise by expanding immunity too broadly, we limit that language." Willow Creek, 235 Wis. 2d 409, ¶ 34. We did not describe how the language in Johnson was limited.[33] However, we now clarify that under Willow Creek and Johnson, equitable relief will be barred when a municipal entity is entitled to immunity. Accordingly, our analysis in this case would be different if we concluded that MMSD were entitled to municipal entity immunity for legislative, quasi-legislative, judicial or quasi-judicial functions. Under circumstances when immunity applies, it bars claims for both monetary damages and injunctive relief. Id., ¶ 36. Therefore, when a plaintiff seeks equitable or injunctive relief against a municipal entity, a court must first answer the threshold question of whether immunity applies. If a court concludes that the actions the plaintiff is seeking to stop through a suit in equity are legislative, quasi-legislative, judicial or quasi-judicial, then the suit must be dismissed because the governmental entity is protected by immunity.
*597 ¶ 67. In addition, City of Milwaukee concluded that Wis. Stat. § 893.80(4) provides no immunity for a municipal entity's ministerial duty to abate. City of Milwaukee, 277 Wis. 2d 635, ¶¶ 9, 54. This conclusion is also supported by our discussion in Physicians Plus, where we addressed nuisance and the duty of municipal entities to abate a nuisance that the entities negligently maintained and of which they had notice. Physicians Plus, 254 Wis. 2d 77, ¶¶ 2-3, 59.
¶ 68. Our conclusion that municipal entities may be subject to orders for equitable relief also finds support in statutory provisions referring to the availability of equitable relief from continuing nuisances, as well as long-standing precedent to the same effect. Currently, Wis. Stat. § 844.01(1) provides that "Any person owning or claiming an interest in real property may bring an action claiming physical injury to, or interference with, the property or the person's interest therein; the action may be to redress past injury, to restrain further injury, to abate the source of injury, or for other appropriate relief." Wisconsin Stat. § 844.17(1) then provides that "Any person whose activities have injured or will injure the plaintiffs property or interests may be made a defendant." (Emphasis added.) "Person" includes "all partnerships, associations and bodies politic or corporate." Wis. Stat. § 990.01(26). These statutes, therefore, refer to circumstances wherein a political body, such as a municipality, may be subject to an action to redress injury to private property caused by a municipal entity's negligent maintenance of a private nuisance that caused significant harm.
¶ 69. Indeed, we expressed such an understanding of the common law duty to abate and of immunity in Costas. Therein, we concluded that a private individual could bring an action for abatement of a private nui *598 sanee against a municipal entity, thereby reaffirming the longstanding availability of injunctive relief against municipally maintained nuisances. See Costas, 24 Wis. 2d at 413-19 (citing Winchell, 110 Wis. 101) (recognizing that municipal entities may be subject to actions for equitable relief from ongoing nuisances)). In recognizing the availability of such relief, we relied on Wis. Stat. § 280.01, which provided that "any person may maintain an action to recover damages for or to abate a private nuisance." Id. at 414.
¶ 70. In 1973, the legislature amended Wis. Stat. § 280.01 and created Wis. Stat. § 814.01, which was identical to current Wis. Stat. § 844.01. See § 16, ch. 189, Laws of 1973. The effect of this amendment was to incorporate § 280.01's relief for interferences with private property into the newly consolidated chapters governing actions to enforce interests in real property. See Drafting File for ch. 189, Laws of 1973, Analysis by the Legislative Reference Bureau, Legislative Reference Bureau, Madison, Wis. Therefore, since the abrogation of municipal immunity in Holytz and its subsequent codification in Wis. Stat. § 893.80, not only have we, in Costas, reaffirmed the availability of equitable relief for the abatement of municipal nuisances, but the legislature, after Costas, reaffirmed the availability of such relief when it simply renumbered and reorganized former § 280.01 into what is now § 844.01.
¶ 71. Therefore, based on the statutory history of Wis. Stat. § 844.01, as well as the common law governing nuisance and the principles of equitable relief, we reach the ineluctable conclusion that a municipal entity may be subjected to claims for equitable relief to abate a negligently maintained nuisance that is a cause of significant harm and of which the municipal entity has *599 notice. Accordingly, we conclude that the circuit court did not erroneously exercise its discretion in granting Bostco equitable relief.
¶ 72. When the circuit court ordered MMSD to abate the private nuisance caused by MMSD's negligent maintenance of its Deep Tunnel, it applied the appropriate legal standard and made a decision that a reasonable court could make. The circuit court's order required MMSD to abate a continuing private nuisance, of which MMSD had notice and which MMSD could abate by reasonable means and at a reasonable cost. The circuit court, however, went one step too far when, without hearing testimony, it concluded that lining the Deep Tunnel was the required means of abatement. Accordingly, we reverse the court of appeals' conclusion that an order for abatement was improper. Abatement is required. We therefore affirm the circuit court's order for abatement, and remand the matter to the circuit court. Upon remand, a hearing may be held to establish whether another method will abate the continuing private nuisance MMSD maintains, or whether lining the Deep Tunnel with concrete is required for abatement.
F. Remaining Issues
¶ 73. Having concluded that Bostco is entitled to relief in the form of abatement of MMSD's continuing nuisance, we now turn to Bostco's other asserted claims for relief, beginning with its challenge to the limitation of damages set forth in Wis. Stat. § 893.80(3), then moving to Bostco's inverse condemnation claim, and finishing with MMSD's claim that Bostco failed to comply with the notice of claim provisions of § 893.80(1) (2005-06). Be *600 cause we agree with the court of appeals' thorough analyses of these issues,[34] see Bostco, 334 Wis. 2d 620, ¶¶ 38-65, 85-91, 108-117, we address them briefly.
1. Limitation of damages under Wis. Stat. § 893.80(3)
¶ 74. Bostco claims that the damage cap under Wis. Stat. § 893.80(3) is unconstitutional, in that it violates equal protection of the law, in contravention of Article I, Section 1 of the Wisconsin Constitution. Section 1 provides:
All people are born equally free and independent, and have certain inherent rights; among these are life, liberty and the pursuit of happiness; to secure these rights, governments are instituted, deriving their just powers from the consent of the governed.
Wis. Const, art. I, § 1. Specifically, Bostco asserts that § 893.80(3) violates equal protection (1) facially, by affording complete relief to plaintiffs injured by governmental actions causing less than $50,000 in damages, while arbitrarily limiting the amount of recovery by those plaintiffs who suffer greater damages; and (2) as applied in this case, because parties who settled with MMSD before June 30, 1994, were not limited to the amounts available under § 893.80(3), while those seeking recovery after that arbitrarily set date are limited to the statutory amounts of recovery.
*601 ¶ 75. Wisconsin Stat. § 893.80(3)'s limitation of damages provides in relevant part:
Except as provided in this subsection, the amount recoverable by any person for any damages, injuries or death in any action founded on tort against any volunteer fire company organized under ch. 181 or 213, political corporation, governmental subdivision or agency thereof and against their officers, officials, agents or employees for acts done in their official capacity or in the course of their agency or employment, whether proceeded against jointly or severally, shall not exceed $50,000.
We have had occasion to review this provision on multiple occasions, including challenges asserting that the limitation on damages violates equal protection. See Sambs v. City of Brookfield, 97 Wis. 2d 356, 293 N.W.2d 504 (1980); Stanhope v. Brown Cnty., 90 Wis. 2d 823, 280 N.W.2d 711 (1979). As noted by the court of appeals in this case, we have upheld § 893.80(3)'s limitation of damages previously, and Bostco has not persuaded us to change our position.
¶ 76. With regard to Bostco's facial challenge, we reiterate the high standard facing litigants asserting a constitutional challenge: legislative enactments are presumed constitutional, and we will resolve any reasonable doubt in favor of upholding the provision as constitutional. See Stanhope, 90 Wis. 2d at 837. In the context of an equal protection challenge, we will sustain a legislative enactment that creates a distinction between treatment of different groups, if there exists a rational basis to support that distinction, provided that the distinction does not implicate a suspect class or impinge upon a fundamental right. See State v. Quintana, 2008 WI 33, ¶ 79, 308 Wis. 2d 615, 748 *602 N.W.2d 447. Because Bostco does not assert that it is a member of a protected class, or that recovery in tort from a governmental entity is a fundamental right, we must uphold the damage limitations in Wis. Stat. § 893.80(3), if there exists a rational basis for the legislature to limit the amount of damages recoverable by plaintiffs against governmental entities. See Stanhope, 90 Wis. 2d at 837-842. "The basic test is not whether some inequality results from the classification, but whether there exists any reasonable basis to justify the classification." Sambs, 97 Wis. 2d at 371 (emphasis added) (quoting Omernik v. State, 64 Wis. 2d 6, 19, 218 N.W.2d 734 (1974)).
¶ 77. In Holytz, 17 Wis. 2d at 40, we recognized that the legislature was free to limit the amount of damages that plaintiffs may recover from governmental entities for the torts of those entities or their officers. We have since reiterated that principle in Sambs, 97 Wis. 2d at 371-78, and Stanhope, 90 Wis. 2d at 837-42. We now reaffirm the legislature's valid limitation of the amount of damages recoverable under Wis. Stat. § 893.80(3). The principle we expressed in Stanhope, 90 Wis. 2d at 842, is as applicable today as it was over 30 years ago:
It is within the legitimate power of the legislature to take steps to preserve sufficient public funds to ensure that the government will be able to continue to provide those services which it believes benefits the citizenry. We conclude that the legislature's specification of a dollar limitation on damages recoverable allows for fiscal planning and avoids the risk of devastatingly high judgments while permitting victims of public tortfeasors to recover their losses up to that limit.
Accordingly, we conclude that a rational basis exists for the damage limitations in § 893.80(3), and therefore reject Bostco's facial challenge to that provision.
*603 ¶ 78. In its as-applied challenge to the damage limits in Wis. Stat. § 893.80(3), Bostco asserts that there exists no rational basis for MMSD to treat its claim any differently than those claims that MMSD paid before June 30,1994, which were not subject to the statutory damage limitations. During the time of construction of the Deep Tunnel, MMSD paid certain property owners for damages caused by soil settlement in the area in which the Deep Tunnel was being constructed. With the belief that it had properly addressed that issue as pertained to affected landowners, MMSD established the June 30, 1994, date as a cutoff for claims, after which MMSD would no longer compensate local landowners for property damage allegedly caused by soil settlement.
¶ 79. Bostco asserts that the establishment of the June 1994 date was arbitrary, thereby violating the precept that "every person within the state's jurisdiction will be protected against intentional and arbitrary discrimination, whether arising out of the terms of a statute or the manner in which the statute is executed by officers of the state." State ex rel. Murphy v. Voss, 34 Wis. 2d 501, 510, 149 N.W.2d 595 (1967). The necessary corollary, however, is that some inequality is generally insufficient to demonstrate unconstitutional disparate treatment — again, where there exists a rational basis for the unequal treatment, we will sustain the official action as within the legislature's power. See State v. McManus, 152 Wis. 2d 113, 131, 447 N.W.2d 654 (1989).
¶ 80. Here, MMSD made the decision to stop paying claims at the end of June 1994, based on its understanding that the situation that had necessitated a dedicated claims procedure had been ameliorated. MMSD provided notice to property owners before No *604 vember 1993, affording the owners sufficient time to prepare any claims before the cutoff date. Although any time limit for claims against a governmental entity may be deemed arbitrary by those whose claims are made after the deadline, the same primary principle that justifies limits on damage amounts — protection of the public fisc — supports the reasonableness of imposing a deadline for claims, especially when the deadline is avowedly tied to the governmental entity's asserted belief that it has addressed the problem necessitating the claims procedure. On these bases, Bostco's equal protection challenge fails.[35]
2. Bostco's forfeiture of inverse condemnation arguments
¶ 81. In its complaint to the circuit court, Bostco alleged that MMSD inversely condemned Boston Store's property when it "physically took portions of the timber pilings which rendered them unusable and damaged the Boston Store Building and Parking Garage." (Emphasis added.) Bostco also alleged that MMSD's conduct amounted to a taking of private property for public use without providing just compensation. Bostco made the same argument in opposing MMSD's motion *605 for summary judgment and at the summary judgment hearing. Bostco, however, did not allege that the groundwater beneath Boston Store was taken. At the court of appeals, Bostco added to its inverse condemnation/takings claim, alleging that in addition to the timber piles, MMSD also took the groundwater beneath Boston Store.
¶ 82. The court of appeals addressed both the timber piles and the groundwater arguments, and held that Bostco could not establish that either claim met the standard for inverse condemnation, namely, that neither the timber piles nor the groundwater was physically occupied by MMSD and that Boston Store was not "practically or substantially" rendered "useless for all reasonable purposes." Bostco, 334 Wis. 2d 620, ¶¶ 111-17 (quoting Howell Plaza, Inc. v. State Highway Comm'n, 92 Wis. 2d 74, 85, 284 N.W.2d 887 (1979)). The court of appeals therefore affirmed the circuit court's dismissal of Bostco's inverse condemnation/takings claim on summary judgment. Id., ¶ 117.
¶ 83. Before us, however, Bostco states in its brief that it "is no longer pursuing its inverse condemnation claim as a taking of the wood piles." Instead, Bostco argues that MMSD "physically took the groundwater" beneath Boston Store. As Bostco is attempting to make a fundamentally different argument than that which it raised and tried before the circuit court, we decline to address its inverse condemnation/takings claim, notwithstanding the court of appeals' decision to reach this issue. See Tatera v. FMC Corp., 2010 WI 90, ¶ 19 n.16, 328 Wis. 2d 320, 786 N.W.2d 810 ("Arguments raised for the first time on appeal are generally deemed forfeited.").
¶ 84. Bostco attempts to avoid the effects of forfeiture by alleging that its complaint before the circuit court "was replete with factual allegations about the *606 taking of groundwater." We disagree. Upon review of Bostco's complaint, we conclude that no facts relevant to a taking of groundwater were raised. Rather, the portions of the complaint that allegedly support a claim for the taking of groundwater consist of general recitations of the following arguments: (1) MMSD failed to protect buildings during excavations; (2) MMSD failed to properly respond to unexpected inflows of water; (3) MMSD failed to properly monitor and recharge lowered groundwater levels; (4) the Deep Tunnel damaged Boston Store; and (5) MMSD was aware of the risk of structural damage to Boston Store.
¶ 85. Most tellingly, Count III of Bostco's complaint, entitled "Inverse Condemnation," does not refer at all to groundwater, and instead focuses entirely on timber piles. Because Bostco has not preserved the groundwater-based contention for appeal, we decline to address its inverse condemnation/takings claim, and therefore affirm the court of appeals, albeit on modified grounds.
3. Bostco's notice of claim
¶ 86. Finally, in its cross-appeal, MMSD asserts that Bostco did not serve MMSD with a notice of injury and itemization of relief as required by Wis. Stat. § 893.80(1) (2005-06),[36] and that Bostco's claims therefore should have been dismissed. Specifically, MMSD argues that the notice it received was insufficient because the notices informing MMSD of the damages to *607 the Boston Store buildings and the relief sought were submitted by entities who are not parties to this action. Those entities named in the notice of claim and itemization of relief were Saks, Inc., a corporation that owns Parisian, Inc., and WISPARK Holdings LLC, an LLC owned by the same holding company that owns Bostco. For its part, Bostco argues that the notice of claim and itemization of relief from the related entities amounted to substantial compliance with § 893.80(1), and that, under our case law, such notice is sufficient.
¶ 87. In pertinent part, Wis. Stat. § 893.80(1) provides:
[N]o action may be brought or maintained against any volunteer fire company organized under ch. 213, political corporation, governmental subdivision or agency thereof nor against any officer, official, agent or employee of the corporation, subdivision or agency for acts done in their official capacity or in the course of their agency or employment upon a claim or cause of action unless:
(a) Within 120 days after the happening of the event giving rise to the claim, written notice of the circumstances of the claim signed by the party, agent or attorney is served on the volunteer fire company, political corporation, governmental subdivision or agency and on the officer, official, agent or employee under s. 801.11. Failure to give the requisite notice shall not bar action on the claim if the fire company, corporation, subdivision or agency had actual notice of the claim and the claimant shows to the satisfaction of the court that the delay or failure to give the requisite notice has not been prejudicial to the defendant fire company, corporation, subdivision or agency or to the defendant officer, official, agent or employee; and
(b) A claim containing the address of the claimant and an itemized statement of the relief sought is *608 presented to the appropriate clerk or person who performs the duties of a clerk or secretary for the defendant fire company, corporation, subdivision or agency and the claim is disallowed.
¶ 88. The notice of claim provisions serve two purposes:[37] "(1) to give governmental entities the opportunity to investigate and evaluate potential claims, and (2) to afford governmental entities the opportunity to compromise and budget for potential settlement or litigation." E-Z Roll Off, LLC v. Cnty. of Oneida, 2011 WI 71, ¶ 34, 335 Wis. 2d 720, 800 N.W.2d 421. In keeping with these purposes, we have recognized that the notice of claim provisions may be satisfied with substantial, rather than strict, compliance. See Figgs v. City of Milwaukee, 121 Wis. 2d 44, 55, 357 N.W.2d 548 (1984). Accordingly, where a claimant fails to strictly comply with the notice of injury provision under Wis. Stat. § 893.80(l)(a), the claimant may nonetheless satisfy that provision by showing that (1) the governmental entity had actual notice of the claim, and (2) the governmental entity was not prejudiced by the claimant's failure to strictly comply. See § 893.80(l)(a); see also State v. Town of Linn, 205 Wis. 2d 426, 435, 556 N.W.2d 394 (Ct. App. 1996).
¶ 89. Additionally, with regard to Wis. Stat. § 893.80(l)(b), referred to as the itemization or notice *609 of claim provision, see Thorp v. Town of Lebanon, 2000 WI 60, ¶ 28, 235 Wis. 2d 610, 612 N.W.2d 59, we have noted that two principles guide our analysis of whether a claim is sufficient under that section. First, the claim must provide the governmental entity with enough information to decide whether to settle the claim. See Gutter v. Seamandel, 103 Wis. 2d 1, 10-11, 308 N.W.2d 403 (1981). Second, we will construe claims so as to preserve bona fide claims for judicial adjudication, rather than cutting them off without a trial. See id.
¶ 90. Here, Bostco's notice of injury informed MMSD that the Boston Store buildings had been damaged by MMSD's operation of the Deep Tunnel. Although the notice and the itemized statement of relief were submitted on behalf of Saks, Inc. and WISPARK Holdings LLC, the naming of these parties cannot reasonably be said to have compromised MMSD's ability to investigate and evaluate the nature of the claim, which was the substantial damage to the Boston Store buildings. Moreover, MMSD has not suffered any prejudice by not knowing precisely which entity owned the property that MMSD was alleged to have damaged; merely being required to litigate, without more, does not demonstrate prejudice. See Luckett v. Bodner, 2009 WI 68, ¶ 43, 318 Wis. 2d 423, 769 N.W.2d 504.
¶ 91. Furthermore, the itemization of relief informed MMSD of what relief was being sought, thereby apprising MMSD of potential costs for which it might have wanted to budget, and allowing MMSD to contemplate settlement for the asserted injuries. Had MMSD sought to compromise or settle the claim (which is not the case here), the naming of different corporate entities did not interfere with the purposes of the notice of claim provisions. Most notable for purposes of compromise or settlement, the same law firm represented *610 Saks, WISPARK, Bostco, and Parisian. See DNR v. City of Waukesha, 184 Wis. 2d 178, 198, 515 N.W.2d 888, (1994) (recognizing that notice of claim statute is satisfied when attorney's address is provided), abrogated on other grounds by State ex rel. Auchinleck v. Town of LaGrange, 200 Wis. 2d 585, 547 N.W.2d 587 (1996). Furthermore, the close relationships of the entities involved would have allowed for meaningful exploration into the possibilities of settlement, since the same executives were involved in the operation and control of the various entities.
¶ 92. In support of its argument that Bostco failed to comply with the notice of claim requirements, MMSD relies on the court of appeals' statement in Markweise v. Peck Foods Corp., 205 Wis. 2d 208, 220-21, 556 N.W.2d 326 (Ct. App. 1996), that "unless the government entity has 'actual knowledge[1] of both the claimant and his or her claim, the investigation and evaluation envisioned by the statute is impossible." That statement, however, arose in the context of thousands of potential claimants against the City of Milwaukee, many of whom remained unknown after the notice of claim. See id. at 221, 232.
¶ 93. Such was not the case here. MMSD was aware of the property damaged, it was aware of the relief sought, and it had sufficient information to contact the claimants. Accordingly, we conclude that Bostco substantially complied with the notice of claim requirements of Wis. Stat. § 893.80(1), and therefore affirm the court of appeals.
III. CONCLUSION
¶ 94. We conclude that MMSD is not entitled to immunity. Once MMSD had notice that the private nuisance it negligently maintained was a cause of *611 significant harm, immunity under Wis. Stat. § 893.80(4) was not available for MMSD. The proper immunity analysis in this case rests on our holding in City of Milwaukee, 277 Wis. 2d 635, ¶ 59, that "[w]hether immunity exists for nuisance founded on negligence depends upon the character of the negligent acts." Where the negligent act was undertaken pursuant to one of those functions set forth in § 893.80(4) — that is, legislative, quasi-legislative, judicial or quasi-judicial functions —immunity may apply. See id,.; see also § 893.80(4).
¶ 95. Here, Bostco's nuisance claim is grounded in MMSD's negligent maintenance of its Deep Tunnel, which maintenance constituted a continuing private nuisance. See Physicians Plus, 254 Wis. 2d 77, ¶ 2-3 (explaining that when all the elements of nuisance are proved and the municipal entity has notice that the nuisance is a cause of significant harm, the entity has a duty to abate). Because MMSD's maintenance of the continuing private nuisance is not a legislative, quasi-legislative, judicial or quasi-judicial function, MMSD is not entitled to immunity. See Hillcrest Golf, 135 Wis. 2d at 439-40 (explaining that the "creation and maintenance of private nuisances are simply not recognized as legislative acts subject to protection under sec. 893.80(4)"); see also Welch, 265 Wis. 2d 688, ¶ 8 (explaining that "no statutory or common law immunity doctrine empowers a public body to maintain a private nuisance"); Menick, 200 Wis. 2d at 745 (concluding "there is no discretion as to maintaining the [sewer] system so as not to cause injury"); Wis. Stat. §§ 844.01(1) and 844.20(2) (providing statutory procedure for seeking abatement of private nuisances).[38] The court of appeals' determina *612 tion that MMSD is not entitled to immunity is therefore affirmed.
¶ 96. Because MMSD does not have immunity for its negligent maintenance of the Deep Tunnel, we also conclude as follows: On the second issue, we conclude that Wis. Stat. § 893.80(3) — (5) do not abrogate MMSD's duty to abate the private nuisance that MMSD caused by its negligent maintenance of the Deep Tunnel, after MMSD had notice that the nuisance was a cause of significant harm. Therefore, we reverse the court of appeals' denial of the equitable relief of abatement.
¶ 97. Third, we conclude that the monetary damage cap in Wis. Stat. § 893.80(3) does not violate equal protection, either facially or as applied to Bostco. Moreover, the nature of Bostco's claim as a continuing nuisance does not render § 893.80(3)'s monetary damage cap inapplicable. Accordingly, we affirm the court of appeals' conclusion that the circuit court properly reduced Bostco's monetary damages to $100,000.
¶ 98. Fourth, with regard to Bostco's inverse condemnation claim, we conclude that Bostco forfeited the argument that it makes before this court, and we therefore affirm the court of appeals on this issue.
¶ 99. Fifth, we conclude that Bostco substantially complied with the notice of claim provisions under Wis. Stat. § 893.80(1) (2005-06), and that MMSD therefore had sufficient notice under those provisions. Accordingly, we affirm the court of appeals on that issue as well.
¶ 100. Because neither Wis. Stat. § 893.80(4) nor (3) abrogates MMSD's duty to abate this private nuisance, we reverse the court of appeals' decision in part, affirm that decision in part, and remand to the circuit court for further proceedings consistent with this opinion. In particular, we reverse the court of appeals' reversal of the circuit court's order for abatement, in *613 part. That is, while we affirm the court of appeals on all other issues, we reverse that court's decision that Bostco was not entitled to equitable relief in the form of an order for abatement. Therefore, we affirm the circuit court decision that abatement is required, and we remand this matter to the circuit court. Upon remand, a hearing may be held to establish whether an alternate method will abate the continuing private nuisance MMSD maintains or whether lining the Deep Tunnel with concrete is required for abatement.
¶ 101. By the Court. — The decision of the court of appeals is affirmed in part, reversed in part and the cause remanded to the circuit court.
¶ 102. DAVID T. PROSSER, J., did not participate.

 Bostco LLC v. Milwaukee Metro. Sewerage Dist. (Bostco), 2011 Wl App 76, 334 Wis. 2d 620, 800 N.W.2d 518.

 Judges Jeffrey A. Kremers and Jean A. DiMotto presided at different phases in the circuit court.

 All references to the Wisconsin Statutes are to the 2011-12 version unless otherwise noted. Although the parties refer to the 2005-06 version, the relevant language remains the same in the current version unless otherwise indicated.

 See also Winchell v. City of Waukesha, 110 Wis. 101, 109, 85 N.W. 668 (1901) (concluding that the "legislative authority to install a sewer system carries no implication of authority to create or maintain a nuisance").

 QUESTION No. 1: "[W]as the District negligent in the manner in which it operated or maintained the tunnel near the Boston Store?"
ANSWER: "Yes."

 QUESTION No. 2: "Was such negligence a cause of the claimed damage to the Boston Store foundation?"
ANSWER: "Yes."

 See Special Verdict Questions Nos. 7 & 8.

 See Special Verdict Question No. 5.

 QUESTION No. 9: "Has the manner in which the District has operated or maintained the tunnel interfered with the Boston Store's use and enjoyment of their building?"
ANSWER: 'Yes."

 See Special Verdict Question No. 11. Bostco's experts testified that the siphoning of water from near Bostco's building could be abated either by lining the Deep Tunnel with concrete or by installing and maintaining a system of groundwater monitoring and recharge wells to replenish the groundwater that is siphoned into the Deep Tunnel.

 See Special Verdict Question No. 10.

 The Honorable Jeffrey Kremers, Milwaukee County Circuit Court, presided at the trial and the initial post-verdict phase of the proceedings.

 The Honorable Jean DiMotto, Milwaukee County Circuit Court, presided over Bostco's claim for equitable relief.

 When discussing the parties' notice of claim arguments, we refer to the numbering of the provisions as they existed in the 2005-06 version of the Wisconsin Statutes, because the numbering of the relevant provisions of the statute has since changed.

 The court of appeals also affirmed the circuit court's decision to dismiss Bostco's excavation protection claim on summary judgment. Bostco, 334 Wis. 2d 620, ¶ 122. That claim is not before us.

 Our conclusion on the question of negligence is based on the jury's findings. Our analysis is confined to whether, upon a finding of negligence, an injured party may seek abatement of a private nuisance that continues to be a cause of significant harm when the municipal entity has notice of such nuisance.

 An intentional interference with another's private use and enjoyment of property requires that the tortfeasor "must either act for the purpose of causing [the interference] or know that it is resulting or is substantially certain to result from his conduct." Restatement (Second) of Torts § 825.

 Previously, in Winchell, 110 Wis. at 103-05, we recognized a municipal entity's obligation to abate a private nuisance that the entity caused. Winchell dealt with an action against the City of Waukesha, to abate and enjoin a nuisance resulting from the City's emptying its sewage into the Fox River, which ran along the side of Winchell's property. Id. at 103. We concluded that the collection and disposal of sewage is for the public safety, but that the "authority granted to municipalities ... to construct sewers, [is] subject to the general legal restrictions resting upon such corporations forbidding invasion of private rights by creation of nuisance or otherwise." Id. at 109. In concluding that the City was required to abate the nuisance it had created, we reasoned:
The great weight of authority, American and English, supports the view that legislative authority to install a sewer system carries no implication of authority to create or maintain a nuisance, and that it matters not whether such nuisance results from negligence or *579 from the plan adopted. If such nuisance be created, the same remedies may be invoked as if the perpetrator were an individual.
Id. We acknowledge that, following Holytz v. City of Milwaukee, 17 Wis. 2d 26, 115 N.W.2d 618 (1962), WinchelVs statement that "it matters not whether such nuisance results from . .. the plan adopted" has been abrogated by Wis. Stat. § 893.80(4), which immunizes such legislative functions as adopting a plan. This limited abrogation, however, has no bearing on Winchell's still valid conclusion that a governmental entity's negligent maintenance of a system or structure, which results in a nuisance of which the entity has notice, may give rise to a claim against the entity to abate that nuisance. It has never been the law that a governmental entity, by virtue of its governmental status alone, may perpetuate an injurious condition of which the entity has knowledge. Our decision reaffirms that longstanding limitation on the power of government to continuously and knowingly invade the rights of its citizens.

 See Special Verdict Question No. 11.

 Ultimately, the court in Welch v. City of Appleton, 2003 WI App 133, 265 Wis. 2d 688, 666 N.W.2d 511, concluded that the City's maintenance of its storm sewer was not a private nuisance. Id., ¶ 8.

 In Anhalt v. Cities & Villages Mutual Insurance Co., 2001 WI App 271, 249 Wis. 2d 62, 72, 637 N.W.2d 422, the court of appeals relied on our statement in Allstate Insurance Co. v. Metropolitan Sewerage Commission of the County of Milwaukee, 80 Wis. 2d 10, 258 N.W.2d 148 (1977), that "the acts of designing, planning and implementing a sewer system are discretionary acts protected under Wis. Stat. § 893.80(4)." This statement comports with our decision today, in that we do not upset the rule that acts of designing, planning, and implementing are legislative or quasi-legislative acts subject to immunity under § 893.80(4). Such acts, however, are distinguishable from the act of negligently maintaining an existing system or structure so as to cause a continuing nuisance, and longstanding law demonstrates that the act of maintaining an existing system or structure is not a legislative or quasi-legislative function. See, e.g., Naker v. Town of Trenton, 62 Wis. 2d 654, 660a, 217 N.W.2d 665, aff'd on reh'g, 62 Wis. 2d 654, 215 N.W.2d 38 (1974) ("Once the decision is made and the [system or structure] is erected, the legislative function is terminated and the doctrine of Holytz that imposes liability for want of ordinary care takes over."). Neither Allstate nor Anhalt decided the question of negligent maintenance that we reach today. Rather, we conclusively resolved that question in Milwaukee Metropolitan Sewerage District v. City of Milwaukee (City of Milwaukee), 2005 WI 8, ¶ 59, 277 Wis. 2d 635, 691 N.W.2d 658, in which we recognized that a governmental entity is not entitled to immunity for a negligent act when such act is not performed pursuant to a legislative, quasi-legislative, judicial or quasi-judicial function. Indeed, our decision in City of Milwaukee on that point was intended to clarify any "confusion" created by unclear statements in cases such as Anhalt. See City of Milwaukee, 277 Wis. 2d 635, ¶ 59 n.17.

 For example, the City could have removed the precise area of pipe that was leaking; it could have sealed the leaky pipe and left it in place, etc. The choice of method for abating the nuisance, like the decision to initially install a particular system, was within the City's discretion. Costas v. City of Fond du Lac, 24 Wis. 2d 409, 418, 129 N.W.2d 217 (1964).

 See Sunnyside Feed Co. v. City of Portage, 222 Wis. 2d 461, 470, 588 N.W.2d 278 (Ct. App. 1998) (defining a continuing nuisance as "an ongoing or repeated disturbance or harm" that "can be discontinued or abated").

 This is a fact question that was resolved by the jury. Question No. 11 of the Special Verdict asked: "Can the District abate the interference by reasonable means and at a reasonable cost so that it no longer interferes with Boston Store's use and enjoyment of their building?" The jury answered this question, "Yes."

 As discussed above, in accordance with our decision in City of Milwaukee, once a governmental entity has notice that its negligent maintenance of a system or structure is causing damage, it is the manner in which MMSD complies with the ministerial duty to fix the problem that is subject to discretion; no such discretion exists as to whether MMSD must fix the known problem. Cf. Rolland v. Cnty. of Milwaukee, 2001 Wl App 53, ¶ 12, 241 Wis. 2d 215, 625 N.W.2d 590 (explaining that the driver of a bus had a ministerial duty not to drive the bus with a wheelchair passenger aboard unless the passenger was secured, even though the method of securing the wheelchair was discretionary). This conclusion comports with our statement in City of Milwaukee, 277 Wis. 2d 635, ¶ 8, that a governmental entity "is immune from suit for nuisance if the nuisance is predicated on negligent acts that are discretionary in nature." Because negligent maintenance of an existing system or structure is not a "legislative, quasi-legislative, judicial or quasi-judicial function," i.e., is not discretionary, no immunity attaches to the entity's negligent maintenance.

 The court's abrogation of immunity in Holytz, was not limited to municipalities, and applied to public bodies within the state such as counties, cities, villages, towns, school districts, sewer districts, drainage districts, and any other political subdivisions of the state. Id. at 40. Therefore, although Holytz and subsequent discussions have referred to "municipal immunity," the phrase "governmental immunity" has been used interchangeably to apply to state officers, non-state governmental entities, and officers or employees of those entities.

 In Holytz, we also recognized that the State's sovereign immunity has its foundation in the Wisconsin Constitution, Article W Section 27, which provides that "The legislature shall direct by law in what manner and in what courts suits may be brought against the state." Accordingly, the effect of Holytz has been more relevant to suits against governmental entities other than the State, as well as to governmental officers and employees.

 In contrast to governmental entities, for governmental officers acting in their official capacity, we have stated that the rule is immunity, and the exception is liability. See Cords v. Anderson, 80 Wis. 2d 525, 539, 259 N.W.2d 672 (1977). This rule for governmental officers is based on public policy considerations that support limiting public officers' personal liability for damages, namely, "(1) The danger of influencing public officers in the performance of their functions by the threat of lawsuit; (2) the deterrent effect which the threat of personal liability might have on those who are considering entering public service; (3) the drain on valuable time caused by such actions; (4) the unfairness of subjecting officials to personal liability for the acts of their subordinates; and (5) the feeling that the ballot and removal procedures are more appropriate methods of dealing with misconduct in public [office]." Lister v. Bd. of Regents of the Univ. of Wis. Sys., 72 Wis. 2d 282, 299, 240 N.W.2d 610 (1976).

 The decision in Naker, 62 Wis. 2d at 660a, does not label the duty to "properly maintain" the sign the town erected as a *589 "ministerial duty." However, the conclusion that it is a ministerial duty flows from the liability to which the municipality was subject.

 Harkness v. Palmyra-Eagle School District, 157 Wis. 2d 567, 460 N.W.2d 769 (Ct. App. 1990), was overruled by DNR v. City of Waukesha, 184 Wis. 2d 178, 191, 515 N.W.2d 888 (1994), to the extent that Harkness implied that § 893.80(l)'s notice of claim requirement applied only to tort claims.

 The words injunction, enjoin, or similar terms that may indicate equitable relief are not present in the statute. Furthermore, reference to injunctive relief would be inconsistent with the purposes of the statute, such as providing a recovery for death.

 In addition, the court of appeals' limitation of remedies based on statutory silence contradicts our decision in Willow Creek Ranch, L.L.C. v. Town of Shelby, 2000 WI 56, 235 Wis. 2d 409, 611 N.W.2d 693, reconsid. denied 239 Wis. 2d 314, wherein we expressly affirmed the availability of declaratory relief, a nonmonetary remedy that, like equitable relief, is not mentioned in Wis. Stat. § 893.80(3). Id., ¶ 36 n.12. Moreover, the court of appeals' conclusion in the case before us is also contrary to Wis. Stat. § 813.02, which has been employed to issue temporary injunctions against municipalities. See Wis. Ass'n of Food Dealers v. City of Madison, 97 Wis. 2d 426, 428-29, 293 N.W.2d 540 (1980).

 Moreover, Willow Creek is not a private nuisance case such as we have here, where the obligation to abate arises with the municipal entity receiving notice of the continuing private nuisance, which has resulted in significant harm. See City of Milwaukee, 277 Wis. 2d 635, ¶¶ 51-62.

 Similarly, because our decision does not "overrule" the court of appeals decision, but rather "reverses in part" the decision of the court below in the same case, the rule announced in Blum v. 1st Auto & Casualty Insurance Co., 2010 WI 78, ¶ 56, 326 Wis. 2d 729, 786 N.W.2d 78, does not apply here. Cf. State v. Ziegler, 2012 WI 73, ¶ 7 n.3, 342 Wis. 2d 256, 816 N.W.2d 238 (recognizing that supreme court decision "withdrawing language" from previous court of appeals decision does not implicate the Blum rule).

 As a final challenge to the damage cap, Bostco asserts that continuing nuisances are not subject to Wis. Stat. § 893.80(3)'s damage cap because that section limits the damages recoverable in "any action founded on tort," and a continuing nuisance constitutes multiple, constantly recurring actions. See, e.g., Stockstad v. Town of Rutland, 8 Wis. 2d 528, 534, 99 N.W.2d 813 (1959) ("It is well settled that every continuance of a nuisance is in law a new nuisance and gives rise to a new cause of action."). As the court of appeals noted, only one nuisance action is before the court, and we therefore need not conclude whether the damage cap would apply in a subsequent action allegedly based on the same continuing nuisance.

 For ease of reference to the parties' arguments, which are based on the 2005-06 version of Wis. Stat. § 893.80(1), we refer to that version of the statutes in this section of the opinion.

 We refer to "the notice of claim provisions" collectively here; these provisions include the "notice of injury provision" under Wis. Stat. § 893.80(l)(a), and the "itemization of relief provision" under § 893.80(l)(b), also referred to as the actual "notice of claim provision." See Thorp v. Town of Lebanon, 2000 WI 60, ¶¶ 23, 28, 235 Wis. 2d 610, 612 N.W.2d 59. Reference to the "notice of claim provisions" is intended to refer to the notices required under both subsections of § 893.80(1).

 See also Winchell, 110 Wis. at 109 (concluding that the "legislative authority to install a sewer system carries no implication of authority to create or maintain a nuisance").

 Per the immunity statute, municipalities would still be shielded from liability for intentional torts committed by employees. Wis. Stat. § 893.80(4).