COURT OF APPEALS
DECISION
DATED AND FILED

June 3, 2025

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

**This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.**

**A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals.** *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2024AP335**

STATE OF WISCONSIN

Cir. Ct. No. 2022SC3164

IN COURT OF APPEALS
DISTRICT III

---

MICHAEL GOEBEN,

　　PLAINTIFF-APPELLANT,

V.

VILLAGE OF BELLEVUE,

　　DEFENDANT-RESPONDENT.

---

APPEAL from a judgment of the circuit court for Brown County: TAMMY JO HOCK, Judge. *Affirmed*.

¶1　　STARK, P.J.[1]　Michael Goeben, pro se, appeals from the circuit court's grant of summary judgment to the Village of Bellevue. Goeben's property is subject to flooding multiple times a year. In response to the flooding, Goeben

---

[1] This appeal is decided by one judge pursuant to WIS. STAT. § 752.31(2) (2023-24). All references to the Wisconsin Statutes are to the 2023-24 version..

filed a small claims complaint against the Village, which the circuit court construed as alleging causes of action for negligence and nuisance in designing or maintaining the stormwater management system (hereinafter, stormwater system) near his property. The Village argued that it was entitled to governmental immunity pursuant to WIS. STAT. § 893.80(4). The court agreed and granted summary judgment in favor of the Village.

¶2 Given that the Village's decision not to increase the size of the stormwater system to remedy the flooding on Goeben's property was an "act[] done in the exercise of legislative, quasi-legislative, judicial or quasi-judicial functions," *see* WIS. STAT. § 893.80(4), we conclude that the Village is entitled to immunity from Goeben's claims. Accordingly, we affirm.

## BACKGROUND

¶3 Goeben owns real property in the Village, which he claims has suffered flooding damage as a result of the stormwater system. It is undisputed that the Village has a ten-foot-wide drainage easement in the back of Goeben's property. According to the record, Goeben previously notified the Village of flooding issues on his property as far back as 2006.

¶4 In May 2007, the zoning administrator for the Village sent Goeben a letter stating that the Village's investigation of the "drainage problem at your new home" revealed several findings. According to the Village, when it issued a building permit for Goeben's house in 2004, the plans for the home's foundation did not include windows, the permit was issued based on Goeben's own drainage plan that was approved by the Village, and that drainage plan showed approximately five feet of drop from the top of the foundation wall to the storm catch basin and drain in the rear of the yard. Nevertheless, the Village explained,

"[w]hen the foundation was poured[,] lookout windows were installed in the south and west basement walls," and, as a result, "[t]he rear yard has now been roughly graded to match the lookout windows, approximately 4 feet lower than the top of the foundation wall."

¶5      The Village, therefore, determined that "[t]he cause of the [flooding] problem stems from installing lookout windows in the basement without the provision of proper safe-guards to avoid surface water drainage problems," "[t]he storm sewer drainage easements and facilities appear to be in good repair," and "[m]itigation of the drainage problem is [Goeben's] responsibility."  The Village then made several recommendations for what *Goeben* could do to correct the flooding problem, including raising the grade of his yard.

¶6      Goeben subsequently responded to the Village's letter, explaining,

> We understand that the water problems for this property are not the result of anything the Village did and that the Village is not at fault.  It is also not due to anything that we did and we are not at fault.  The developer/contractor is responsible for the problems.  We had always planned on basement lookout windows and they were in the plans (dated, Sept[ember] 24, 2004) for the house that w[ere] attached to the contract we signed on Oct[ober] 6, 2004….  The problem stems from the contractor not submitting the correct building foundation and drainage plans when they applied for the building permit.  This is a contractor error and they should be held responsible.

(Formatting altered.)

¶7      The basis for the current lawsuit began on August 7, 2021, when there was a substantial rainstorm that led to significant flooding.  According to Goeben, on that date "water flooded a majority of [his] backyard," reached

"depths of about 2 feet," and "entered the basement of" his home.[2]  More flooding subsequently occurred on August 9, 2021.

¶8      After those flooding incidents, Goeben again contacted the Village. The Village inspected the stormwater system in that area, which included cleaning and inspecting the system by video, and the Village "determined that the storm sewer is free and clear of any issues and is working as designed."  During a Village board meeting on March 9, 2022, Cedar Corporation was tasked with preparing a "[s]tormwater [m]odeling and [a]nalysis of the" stormwater system.

¶9      According to Cedar's report, the stormwater system was "designed beginning in 1996 thr[ough] 2004," and "[m]odeling programs and rainfall intensities have changed drastically over the last 20-30 years as technology has advanced."  The report explained that "[t]he existing storm sewer system … does not pass a five-year storm event without surcharging the existing system with the current storm sewer modeling software and higher rain events today."  The report explained that "[s]urcharging a storm sewer system is an allowable design standard while keeping the hydraulic grade line below the road surface."  "[W]hen the storm sewer in the road and pipes surcharge, the backyard will flood with or before the road.  In the event of a larger event, the backyard will act as a reservoir and rise to the level of the surrounding ground."

¶10     Cedar did not find any defects in the construction, operation, or maintenance of the Village's stormwater system, and it determined that water was

---

[2] Goeben attributes the flooding to the stormwater system "surcharging."  Surcharging occurs when a "stormwater system reaches its maximum capacity," and "as water attempts to enter and flow through the system, it finds that it has nowhere to go, so it will back-up towards the next lowest point available until there is more capacity in the primary pipe."

not flooding Goeben's property as the result of a leak, crack, burst, or other defect in the pipes. Instead, as the report's author averred, "The rain event that occurred on August 7-9, 2021 was greater than a five-year rain event." The Cedar report ultimately identified "possible solutions" to the flooding, which ranged in cost from $23,010 to $75,134.

¶11 In a memorandum to the Village administrator, the Village's director of public works stated that "[u]pon staff review of" Cedar's report, "the Village perspective does not indicate that public stormwater infrastructure is responsible for [Goeben's] drainage concerns or the flooding of the home's basement." The memo went on to explain that "the property owner has been notified to adjust the lot to comply with proper grading and drainage. Staff feel that compliance with the grading and drainage plan will likely alleviate concerns with water entering the home's basement in most instances." Ultimately, the Village board declined to take any action suggested by Cedar's report.

¶12 In response, Goeben filed a small claims action against the Village on August 18, 2022. Goeben asserted that the Village's stormwater system did not meet "the 5[-]year storm event requirement" and that the Village was "draining the public street and storm sewer water to [his] backyard," and that it was "using his property as a reservoir," which he called an illegal "taking" under state and federal law. He sought a money judgment in the amount of $10,000.

¶13 The Village moved for summary judgment. According to the Village, even assuming negligence in the design of the stormwater system, it was not liable for Goeben's damages on the basis of governmental immunity. A court commissioner granted the Village's motion and dismissed the small claims complaint.

¶14 Goeben thereafter sought de novo review in the circuit court. Again, the Village moved for summary judgment on the basis of governmental immunity. Within his response to the Village's motion, Goeben stated that he was additionally claiming "tort liability, negligence, intentional tort, 'known danger,' personal injury, and private nuisance."

¶15 Without hearing oral argument, the circuit court entered a written order, granting the Village's motion and dismissing Goeben's claims. The court, identifying Goeben's claims as claims for nuisance and negligence, determined that "[t]he Village board's decision not to pursue Cedar's suggestions concerning the 'continued existence' of the [stormwater system] was an appropriate 'legislative decision[]' for which the [V]illage enjoys immunity under [WIS. STAT. §] 893.80(4)." *See Milwaukee Metro. Sewerage Dist. v. City of Milwaukee*, 2005 WI 8, ¶60, 277 Wis. 2d 635, 691 N.W.2d 658. It further concluded that none of the exceptions to governmental immunity apply in this case.

¶16 Goeben subsequently moved for reconsideration of the circuit court's decision. He also filed a "second Motion for Reconsideration [that was] intended to be an addition and a follow-up to the original Motion for Reconsideration," several letters to the court, affidavits, and motions for discovery. In another written decision and order, the circuit court denied Goeben's motion for reconsideration. According to the court, Goeben's motion for reconsideration alleged "inaccuracies in the [c]ourt's decision 'due to false and misleading affidavits' from the Village." The court rejected each of his

arguments. Goeben then filed motions for a new trial and for clarification, which the court also denied. Goeben appeals.[3]

## DISCUSSION

¶17 "A private nuisance is a condition that harms or interferes with a private interest," and "[t]he tort of nuisance is grounded in a condition or activity that unduly interferes with a public right or with the use and enjoyment of private property." *Bostco LLC v. Milwaukee Metro. Sewerage Dist.*, 2013 WI 78, ¶¶28, 30, 350 Wis. 2d 554, 835 N.W.2d 160. "At the outset, it is imperative to distinguish between a nuisance and liability for a nuisance, as it is possible to have a nuisance and yet no liability." *Milwaukee Metro. Sewerage Dist.*, 277 Wis. 2d 635, ¶25. "A nuisance is nothing more than a particular type of harm suffered; liability depends upon the existence of underlying tortious acts that cause the harm." *Id.* "Liability for a nuisance may be based upon either intentional or negligent conduct." *Id.*, ¶33.

¶18 "[T]hose seeking to establish liability for a private nuisance" must establish both that the defendant's "conduct is a legal cause of an invasion of [the plaintiff's] interest in the private use and enjoyment of land" and that the defendant's "invasion is either (a) [i]ntentional and unreasonable, or (b) [u]nintentional and otherwise actionable under the rules controlling liability for

---

[3] Goeben filed a notice of appeal from the circuit court's summary judgment decision. We subsequently dismissed Goeben's appeal based on our lack of jurisdiction because the circuit court's order did not dismiss or adjudicate the case and was not a final order. *See Wambolt v. West Bend Mut. Ins. Co.*, 2007 WI 35, ¶35 n.13 & n.14, 299 Wis. 2d 723, 728 N.W.2d 670. Goeben appealed again from the circuit court's order denying his motion for reconsideration, which we determined was an appeal from the circuit court's entry of judgment challenging the dismissal of Goeben's claims against the Village.

negligent or reckless conduct, or for abnormally dangerous conditions or activities." ***Bostco***, 350 Wis. 2d 554, ¶31.

¶19     On appeal, Goeben insists that it is undisputed that the flooding on his property is a private nuisance that exists as a result of the Village's "use of Goeben's property as a [water] reservoir," that "[t]he Village first received notice of the nuisance in 2006," and that "the Village [b]oard voted to persist in maintaining said nuisance." According to Goeben, "[n]o municipality has immunity if [its] actions lead to harm and injury and deprive[] residents of the use and enjoyment of their property. The Village's duty to resolve this private nuisance is clear and absolute" and amounts to a "ministerial obligation."

¶20     The Village, in contrast, contends that "[t]he record clearly establishes that the Goeben flooding problems are the result of the following:"

> (1) a lack of capacity in the design of the Village storm water system; (2) a storm sewer pipe installed by Goeben's neighbors to drain their yards that discharges storm water to the catch basin at the rear of the Goeben property; and (3) the grade of the Goeben property necessitated by … Goeben['s] choice to have lookout windows in his basement.

Accordingly, even assuming a negligent design of the stormwater system, the Village asserts that it has immunity from any liability in this case under WIS. STAT. § 893.80(4).

¶21     WISCONSIN STAT. § 893.80(4) generally immunizes municipalities and their employees from liability arising out of "acts done in the exercise of legislative, quasi-legislative, judicial or quasi-judicial functions," ***Lodl v. Progressive N. Ins. Co.***, 2002 WI 71, ¶¶20-21, 253 Wis. 2d 323, 646 N.W.2d 314 (citing § 893.80(4)), which our supreme court "has consistently interpreted … [as]

any acts that involve the exercise of discretion," ***Engelhardt v. City of New Berlin***, 2019 WI 2, ¶22, 385 Wis. 2d 86, 921 N.W.2d 714.  Governmental immunity, however, is subject to several exceptions, including (1) "the performance of ministerial duties imposed by law"; (2) "known and compelling dangers that give rise to ministerial duties on the part of public officers or employees";[4] (3) "acts involving medical discretion"; and (4) "acts that are malicious, willful, and intentional." ***Lodl***, 253 Wis. 2d 323, ¶24.

¶22     As both the Village and the circuit court correctly recognize, when determining whether governmental immunity applies, we assume that the Village acted negligently, and we instead focus "on whether the [Village's] action (or inaction) upon which liability is premised is entitled to immunity under the statute, and if so, whether one of the judicially-created exceptions to immunity applies." *See id.*, ¶17.  The application of WIS. STAT. § 893.80(4) and its exceptions to a set of facts are questions of law we review de novo. *See **Kierstyn v. Racine Unified Sch. Dist.***, 228 Wis. 2d 81, 88, 596 N.W.2d 417 (1999).  Furthermore, as this case is before us on the circuit court's grant of summary judgment, we review the court's decision de novo, applying the same methodology, while benefiting from its analysis. ***Lodl***, 253 Wis. 2d 323, ¶15; WIS. STAT. § 802.08(2).

¶23     On appeal, Goeben renews his argument that the circuit court erred by granting the Village's motion for summary judgment on the basis of governmental immunity.  He asserts two grounds for the court's error.  First, Goeben argues that three exceptions to governmental immunity preclude a finding

---

[4] The ministerial duty and the known danger exceptions "overlap to an extent, inasmuch as they both require the identification of a ministerial duty." ***Pries v. McMillon***, 2010 WI 63, ¶24, 326 Wis. 2d 37, 784 N.W.2d 648.

that the Village is immune from his claims. Second, he asserts that material questions of fact exist in this case, preventing summary judgment.

¶24   For the reasons that follow, we agree with the circuit court that the Village is immune from liability for Goeben's claims under WIS. STAT. § 893.80(4) because the Village is immune from liability for "[d]ecisions concerning the adoption, design, and implementation of a public works system," including its "continued existence," as they "are discretionary, legislative decisions." *See* ***Milwaukee Metro. Sewerage Dist.***, 277 Wis. 2d 635, ¶¶9, 60. We further conclude that none of the exceptions to immunity apply. Therefore, we affirm the court's decision on summary judgment.

## I.  Ministerial Duty

¶25   "The ministerial duty exception is not so much an exception as a recognition that immunity law distinguishes between discretionary and ministerial acts, immunizing the performance of the former but not the latter." ***Lodl***, 253 Wis. 2d 323, ¶25. A ministerial duty is "absolute, certain and imperative, involving merely the performance of a specific task when the law imposes, prescribes and defines the time, mode and occasion for its performance with such certainty that nothing remains for judgment or discretion." ***Engelhardt***, 385 Wis. 2d 86, ¶32 (citation omitted). The "law" imposing a ministerial duty may include "statutes, administrative rules, policies or orders." ***Meyers v. Schultz***, 2004 WI App 234, ¶19, 277 Wis. 2d 845, 690 N.W.2d 873. "Whether a duty is discretionary or ministerial is a question of law that we review de novo." ***Yao v. Chapman***, 2005 WI App 200, ¶27, 287 Wis. 2d 445, 705 N.W.2d 272.

¶26   Goeben asserts that "[t]he Village has failed in its ministerial duty to maintain the sewer to design standards and code" and that "Wisconsin law

imposes a duty upon the [Village] to maintain its facilities." According to Goeben, "[i]t is a maintenance responsibility (ministerial duty) to align the sewer with the Village's intentions" and "to maintain the sewer to design standards and code." He asserts that "[t]he Village is currently utilizing a private residence's property as a makeshift reservoir to prevent flooding on the public street and other residences and failing [its] maintenance responsibilities of a growing subdivision."

¶27 What Goeben's arguments fail to appreciate is that "[n]ot all duties are ministerial—to the contrary, 'for a duty to be ministerial, a [municipality] must be not only bound to act, but also bound by law to act in a very particular way[.]'" *See Knoke v. City of Monroe*, 2021 WI App 6, ¶46, 395 Wis. 2d 551, 953 N.W.2d 889 (2020) (citing *Yao*, 287 Wis. 2d 445, ¶29). As noted above, "a duty is ministerial only when it 'prescribes and defines the time, mode and occasion for its performance with such certainty that nothing remains for judgment or discretion.'" *Id.* (citing *Engelhardt*, 385 Wis. 2d 86, ¶32). Goeben advances his beliefs about what he thinks *should be* a ministerial duty without offering any legal authority affirmatively stating that the Village has a ministerial duty *imposed by law* to, essentially, keep its stormwater system current with developing needs.

¶28 We conclude that the Village does not have a ministerial duty imposed by law to maintain its stormwater system so that it aligns with the municipality's changing needs. As the Village argues, "[w]hile a duty to fix a known defect or maintain a public sewer system could be ministerial in nature, neither defects nor maintenance are at issue in this case." *See Milwaukee Metro. Sewerage Dist.*, 277 Wis. 2d 635, ¶9 ("[T]he City may be liable for its negligence in failing to repair the leaky water main."). According to the record, Cedar's inspection and analysis did not find any defects in the construction, operation, or maintenance of the stormwater system, and there is no evidence that water is

accumulating on Goeben's property as a result of a blockage, a leak, a crack, or any other defect. Goeben does not advance any contrary evidence.[5]

¶29    Instead, Cedar determined that when the Village designed the stormwater system in 1996, its capacity was based on a five-year rain event calculated using methods and technologies that were current at that time. As the circuit court explained, "The reality is that [the stormwater system] does not have the capacity to handle the current five-year rain event without surcharging." The Cedar report's author further averred by affidavit that "[w]hile Goeben's property can act like a reservoir," "the Village is not intentionally using it as one. The collecting of water on Goeben's property is a result of a combination of a

---

[5] We note that Goeben asserts that "[t]he Village is either intentionally utilizing Goeben's property as a reservoir or the sewer system is defective; it must be one or the other." Because the Village states that it is not intentionally using Goeben's property as a reservoir, he contends that "[t]his means … the Village's sewer is not working as designed and is defective." Goeben's argument suffers from a logical fallacy because there are other explanations for the flooding—i.e., an increase in rainfall that is beyond the capability of the system as it was designed and the low level of Goeben's rear yard as compared to the stormwater system in the roadway—aside from a defect in the system or the Village's intentional use of his property as a reservoir. Aside from his argument on this point, it does not appear that Goeben has advanced any *evidence* that the stormwater system is in fact defective.

We also recognize that throughout his briefing, Goeben refers to "maintenance negligence" and suggests that the term refers to the fact that "the sewer complied with the" five-year rain event "when implemented but no longer meets th[is] standard[]," thereby using his own beliefs about the term "maintenance" to bring the facts here outside the governmental immunity umbrella. The word maintain—where maintenance is the "act of maintaining"—means "to keep in an existing state (as of repair, efficiency, or validity): preserve from failure or decline." *Maintain*, MERRIAM-WEBSTER DICTIONARY, https://www.merriam-webster.com/dictionary/maintain (last visited May 22, 2025); *see also Maintenance*, MERRIAM-WEBSTER DICTIONARY, https://www.merriam-webster.com/dictionary/maintenance (last visited May 22, 2025). Maintain does not, however, mean to update, to upgrade, to improve, or to overhaul. Thus, while the Village may have a duty to preserve the stormwater system from failure or decline, it does not have a ministerial duty to upgrade the system to the current needs of the subdivision.

stormwater system at capacity, drainage from other properties, and the grade of Goeben's yard and catch basin."

¶30    We conclude that this case is controlled by our supreme court's decision in *Milwaukee Metropolitan Sewerage District*.  There, the court made it clear that "[d]ecisions concerning the adoption, design, and implementation of a public works system are discretionary, legislative decisions for which a municipality enjoys immunity."  *Milwaukee Metro. Sewerage Dist.*, 277 Wis. 2d 635, ¶¶9, 60.  "Even if the system is poorly designed," a municipality "is immune from suit relating to its decisions concerning the adoption of a waterworks system, the selection of the specific type of pipe, the placement of the pipe in the ground, and the continued existence of such pipe."  *Id.* (citation omitted).[6]

¶31    Therefore, the Village board's later decision not to pursue Cedar's suggestions concerning the "continued existence" of the stormwater system was a "legislative decision[] for which [the Village] enjoys immunity" under WIS. STAT. § 893.80(4).  *See Milwaukee Metro. Sewerage Dist.*, 277 Wis. 2d 635, ¶9.  In other words, the Village is under no ministerial duty imposed by law to correct discretionary decisions related to the original construction or design of the stormwater system, including its continued existence, meaning that there is no

---

[6] Throughout his briefing, Goeben argues that "[t]he evidence shows the Village did not design or implement the sewer" as a basis to establish that "design immunity" does not apply. (Formatting altered.)  We question the logic of this argument.  If Goeben is actually attempting to assert that the Village had no involvement in the design or implementation (including the approval of either) of the stormwater system, then we are unclear how the Village could have any liability in this case.  If, however, Goeben is simply suggesting that the Village did not *literally* design or implement the stormwater system, then we reject his argument because immunity applies to all of the Village's discretionary decisions related to whether and how the system should be installed.  *See Milwaukee Metro. Sewerage Dist. v. City of Milwaukee*, 2005 WI 8, ¶60, 277 Wis. 2d 635, 691 N.W.2d 658.

ministerial duty to upgrade the stormwater system. *See **Anhalt v. Cities & Vills. Mut. Ins. Co.***, 2001 WI App 271, ¶16, 249 Wis. 2d 62, 637 N.W.2d 422, *abrogated on other grounds by **Milwaukee Metro. Sewerage Dist.***, 277 Wis. 2d 635, ¶59 n.17 ("Our review of Wisconsin case law has uncovered no precedent for the position that a municipality has a positive duty to keep its sewer system current with developing needs.").

¶32     In support of his position, and in contrast to our conclusion here, Goeben cites several cases that he argues stand for the proposition that the Village is required to act to abate a private nuisance, i.e., the flooding on his property. For example, Goeben cites ***Bostco***, where it was alleged that the Milwaukee Metropolitan Sewerage District (MMSD) negligently operated and maintained a sewerage tunnel beneath Bostco LLC's property, which resulted in excessive groundwater seepage and significant damage to Bostco's buildings. ***Bostco***, 350 Wis. 2d 554, ¶1. Our supreme court rejected MMSD's immunity claim, stating that once MMSD "had notice that the private nuisance it negligently maintained was causing significant harm, immunity under WIS. STAT. § 893.80(4) was not available." *Id.*, ¶3.

¶33     Here, the issue is not the negligent operation or maintenance of the stormwater system; the system is operating as intended. Thus, unlike ***Bostco***, where MMSD's maintenance choice was damaging Bostco's property, the Village's role in the design and the installation of the stormwater system was a discretionary choice. *See id.*, ¶41 n.21 ("[W]e do not upset the rule that acts of designing, planning, and implementing are legislative or quasi-legislative acts subject to immunity under § 893.80(4). Such acts, however, are distinguishable from the act of negligently maintaining an existing system or structure so as to cause a continuing nuisance, and longstanding law demonstrates that the act of

maintaining an existing system or structure is not a legislative or quasi-legislative function.").

¶34    Goeben cites ***Bostco*** for the general proposition that "[t]he duty to act to abate a nuisance arises when one has notice that he [or she] is maintaining a nuisance that is a cause of significant harm." *See **id.***, ¶34.    However, a governmental entity is not always subject to liability for a failure to abate a nuisance.  As the ***Bostco*** court reiterated,

> The proper immunity analysis in this case rests on our holding in [***Milwaukee Metropolitan Sewerage District***] that "[w]hether immunity exists for nuisance founded on negligence depends upon the character of the negligent acts."  Where the negligent act was undertaken pursuant to one of those functions set forth in [WIS. STAT.] § 893.80(4)—that is, legislative, quasi-legislative, judicial or quasi-judicial functions—immunity may apply.

***Bostco***, 350 Wis. 2d 554, ¶3 (second alteration in original) (quoting ***Milwaukee Metro. Sewerage Dist.***, 277 Wis. 2d 635, ¶59).

¶35    Goeben also cites other cases in support of his position; however, these cases have either been called into question or explicitly overruled.  For example, he cites ***Hillcrest Golf & Country Club v. Altoona***, 135 Wis. 2d 431, 400 N.W.2d 493 (Ct. App. 1986), *overruled by **Milwaukee Metro. Sewerage Dist.***, 277 Wis. 2d 635, ¶59 n.17, stating that "the [c]ourt expressly rejected the contention that discretionary immunity under [WIS. STAT. §] 893.80(4) was a viable defense to a nuisance claim." (Formatting altered.)  In ***Hillcrest***, this court stated that "[t]he creation and maintenance of private nuisances are simply not recognized as legislative acts subject to protection under [§] 893.80(4)." ***Hillcrest***, 135 Wis. 2d at 439-40.

¶36     ***Milwaukee Metropolitan Sewerage District*** overruled ***Hillcrest***. *See **Knoke***, 395 Wis. 2d 551, ¶¶40-41 ("To the extent ***Hillcrest*** concludes that nuisance claims against a governmental entity are exempt from discretionary immunity, that conclusion has been expressly overruled by our supreme court."). The court in ***Milwaukee Metropolitan Sewerage District*** specifically criticized ***Hillcrest*** for "continu[ing] to rely on immunity jurisprudence that predated ***Holytz*** [***v. City of Milwaukee***, 17 Wis. 2d 26, 115 N.W.2d 618 (1962),] and [WIS. STAT.] § 893.80(4)." ***Milwaukee Metro. Sewerage Dist.***, 277 Wis. 2d 635, ¶59 n.17.

¶37     Goeben also relies on ***Menick v. City of Menasha***, 200 Wis. 2d 737, 547 N.W.2d 778 (Ct. App. 1996), ***Welch v. City of Appleton***, 2003 WI App 133, 265 Wis. 2d 688, 666 N.W.2d 511, and ***Anhalt***.  These cases were all identified in ***Milwaukee Metropolitan Sewerage District*** as being decisions "involving sanitary and storm sewers" where this court has "utilized conflicting rationales to reach results that are not entirely consistent." ***Milwaukee Metro. Sewerage Dist.***, 277 Wis. 2d 635, ¶59 n.17.  Goeben relies on propositions in these cases that have since been abrogated by the holding in ***Milwaukee Metropolitan Sewerage District***. ***Id.***, ¶¶9, 60.[7]

---

[7] The other cases cited by Goeben—***Costas v. City of Fond Du Lac***, 24 Wis. 2d 409, 129 N.W.2d 217 (1964), ***Bratonja v. City of Milwaukee***, 3 Wis. 2d 120, 87 N.W.2d 775 (1958), ***Winchell v. City of Waukesha***, 110 Wis. 101, 85 N.W. 668 (1901), and ***Harper v. City of Milwaukee***, 30 Wis. 365 (1872)—are equally inapplicable to the present dispute because they rely on the law before ***Holytz v. City of Milwaukee***, 17 Wis. 2d 26, 115 N.W.2d 618 (1962), WIS. STAT. § 893.80(4), and ***Milwaukee Metropolitan Sewerage District***. *See **Milwaukee Metro. Sewerage Dist.***, 277 Wis. 2d 635, ¶55 n.14.  He also cites ***Naker v. Town of Trenton***, 62 Wis. 2d 654, 215 N.W.2d 38, *aff'd on reh'g*, 62 Wis. 2d 654, 660a, 217 N.W.2d 665 (1974), which the ***Bostco*** court explained was distinguishable because acts of designing, planning, and implementing are different from the act of negligently maintaining an existing system so as to cause a continuing nuisance. *See **Bostco LLC v. Milwaukee Metro. Sewerage Dist.***, 2013 WI 78, ¶41 n.21, 350 Wis. 2d 554, 835 N.W.2d 160.

(continued)

¶38 Thus, Goeben's arguments advance conclusory assertions about an alleged ministerial duty that lack support in current immunity law. There is simply no legal authority in support of Goeben's proposition that the Village had an "absolute, certain and imperative" duty to overhaul the stormwater system to meet the subdivision's changing needs. *See Engelhardt*, 385 Wis. 2d 86, ¶32 (citation omitted). While the Village board considered Cedar's recommendations in its report, it voted against implementing those options. That decision concerned the "continued existence" of the stormwater system and was a "legislative decision[]" for which the Village enjoys immunity under WIS. STAT. § 893.80(4). *See Milwaukee Metro. Sewerage Dist.*, 277 Wis. 2d 635, ¶60.

## II. Known and Compelling Danger

¶39 Next, Goeben asserts that it is "undisputed" that a known danger exists as a result of the flooding in his yard. According to Goeben, "[t]wo Village Administrators label the situation as a hazard (accident waiting to happen)"; "[r]egular flooding of polluted sewer water [c]reates a known danger to the health, safety, and [the] lives of the Goeben family, neighbors, local elementary children

Goeben further argues that the "[l]andmark case *Holytz* … abrogated the principle of government[al] immunity." As we have explained before, "[u]nder the common law and up through the 1960s, the government was immune from tort liability as a general rule," but "[i]n *Holytz* …, our supreme court abrogated the common law government[al] immunity doctrine." *Knoke v. City of Monroe*, 2021 WI App 6, ¶¶13, 16, 395 Wis. 2d 551, 953 N.W.2d 889 (2020). The legislature later adopted the predecessor to WIS. STAT. § 893.80, *see* WIS. STAT. § 331.43(3) (1963-64); 1963 Wis. Laws, ch. 198; *Knoke*, 395 Wis. 2d 551, ¶17 & n.3, and our supreme court has acknowledged that the general rule of liability adopted in *Holytz* has effectively been abrogated by case law, *see Pries v. McMillon*, 2010 WI 63, ¶17, 326 Wis. 2d 37, 784 N.W.2d 648 (explaining that the *Holytz* "rule, since abrogated by case law, provided that in cases alleging negligent acts by public officials, liability was the rule and governmental immunity was the exception"); *see also Engelhardt v. City of New Berlin*, 2019 WI 2, ¶70, 385 Wis. 2d 86, 921 N.W.2d 714 (Dallet, J., concurring) ("The result of this court's adoption of the pre-*Holytz*, pre-WIS. STAT. § 893.80(4) language conditioning immunity on the performance of discretionary acts has been a return to governmental immunity as the rule and liability as the exception.").

(two blocks away), and pets"; and "contaminated sewer water carries illicit discharges and deposits toxic debris onto Goeben's property and in[to] their home—seeping into the walls, insulation, framing, and sheetrock." He states that "[t]he danger persists, as it recurs with each flooding event." Finally, he concludes that "[i]t's not a matter of 'if,' but rather 'when' someone—whether it's Goeben, a neighbor, or a child—will suffer serious injury or death."

¶40    Governmental immunity does not apply under circumstances where liability is based upon a failure to properly respond to a particular danger that is "compelling and known … and is of such force that the [municipality] has no discretion not to act." *See* ***Lodl***, 253 Wis. 2d 323, ¶34 (citations omitted). In other words, "a dangerous situation will be held to give rise to a ministerial duty only when 'there exists a known present danger of such force that the time, mode and occasion for performance is evident with such certainty that nothing remains for the exercise of judgment and discretion.'" ***Id.***, ¶38 (citation omitted). For this exception to apply, "the danger must be so compelling that a 'self-evident' and 'particularized' … action is required," but "[i]t is not enough that the situation require[s] the [municipality] 'to do something about it.'" *See* ***Voss ex rel. Harrison v. Elkhorn Area Sch. Dist.***, 2006 WI App 234, ¶18, 297 Wis. 2d 389, 724 N.W.2d 420 (citation omitted); *see also* ***American Fam. Mut. Ins. Co. v. Outagamie County***, 2012 WI App 60, ¶26, 341 Wis. 2d 413, 816 N.W.2d 340 ("[T]he exception is reserved for situations that are more than unsafe, where the danger is so severe and immediate that a specific and immediate response is required" and "where injury is almost certain to occur.").

¶41    Applying these standards to the circumstances of this case, we conclude that the known and compelling danger exception does not apply. Again, Goeben advances arguments based on his beliefs about what constitutes a danger,

rather than providing support for his position under the law. While flood waters in general could no doubt be defined as dangerous, a "known danger," as that term is used in governmental immunity jurisprudence, means something specific: "sufficiently dangerous to require an explicit, non-discretionary municipal response." *See Lodl*, 253 Wis. 2d 323, ¶39. As our supreme court has explained, "[t]his exception is a very limited one" requiring "extraordinary events." *Kierstyn*, 228 Wis. 2d 81, ¶¶30-31. While Goeben uses exaggerated language to describe what is admittedly a frustrating and messy set of circumstances,[8] the fact is that backyard flooding and the water in Goeben's basement do not rise to the level of, for example, a 90-foot drop-off on an unmarked park trail open at night, a fallen tree blocking a roadway, *see id.*, ¶¶31-33, or an 8-year-old nonswimmer at a busy pool, *see Engelhardt*, 385 Wis. 2d 86, ¶54. While standing water constitutes a risk, "[t]he nature of the danger here was [not] immediate, compelling, and self-evident." *See Engelhardt*, 385 Wis. 2d 86, ¶54. For these reasons, we conclude that the known danger exception to governmental immunity is not applicable.

### III. Malicious, Willful, and Intentional Acts

¶42 Goeben's final argument on governmental immunity pertains to the malicious, willful, and intentional acts exception. Goeben argues that "[t]he Village acknowledges [its] negligence, yet they have not taken corrective action";

---

[8] Goeben claims in his brief-in-chief that "[t]he sewer water is polluted with illicit discharges, including property (pesticides) and road runoff (car fluids), feces, animal remains, garbage, yard debris, bugs, chemicals, and carries viruses and bacteria." We note, however, that the record is clear that there is a "separate system for storm water and for wastewater (sanitary sewer)," and the "sanitary sewer system cannot and does not surcharge [onto] Goeben's property."

therefore, "[its] actions are intentional" because "the Village Board voted to not implement any of the solutions" suggested by Cedar "and continue[d] using Goeben's property as a reservoir to store public sewer water."

¶43 We conclude that the malicious, willful, and intentional acts exception does not apply. First, we note that Goeben fails to cite any legal authority in support of his argument. We need not consider arguments that are unsupported by references to legal authority. *See State v. Pettit*, 171 Wis. 2d 627, 646, 492 N.W.2d 633 (Ct. App. 1992). Regardless, Goeben misunderstands this exception to governmental immunity. The exception does not merely encompass intentional conduct. *Bicknese v. Sutula*, 2003 WI 31, ¶19, 260 Wis. 2d 713, 660 N.W.2d 289. Instead, "the three terms should be read in conjunction as 'malicious, willful, *and* intentional.'" *Id.* This means "that the exception should only apply to ill-intended acts, as opposed to all 'intentional' actions," and the exception should serve "as a potential 'remedy [for] gross municipal wrongdoing.'" *Id.* (alteration in original; citation omitted).

¶44 Here, there is no evidence in the record that the Village's decision to design and install the current stormwater system was done with ill intent, nor is there evidence that the Village board's discretionary decision not to overhaul the system was based in malice. As noted, the stormwater system is not broken or defective; therefore, the Village is not engaging in wrongdoing by failing to fix it. Accordingly, the malicious, willful, and intentional acts exception to governmental immunity is not applicable here.

## IV. Material Issues of Fact

¶45 Finally, Goeben contends that issues of material fact remain, making summary judgment inappropriate. According to Goeben, "[m]any of the

statements, items of fact and not opinion," made by the Village in the record "are false and constitute perjury." For example, he asserts that there remain questions about who designed the stormwater system and in what year; whether there is a catch basin located on Goeben's property; whether the neighbor's drainage pipe extends to Goeben's property; whether the Village is intentionally utilizing Goeben's property as a reservoir for the public sewer; whether the stormwater system is operating as designed and is, therefore, defective; whether "the sewer release[s] sewer water onto Goeben's property prior to reaching capacity"; whether "there [is] a private easement agreement between neighbors and [whether] the Village ha[s] control over the defined drainage easement area"; and whether the Village's "only available solution[]" requires it to overhaul the roadway.

¶46    We conclude that Goeben's argument is undeveloped. Goeben states, in a conclusory fashion, that there are disputed issues of material fact, but he makes no attempt to explain why the disputed facts that he has identified are material to the specific question of whether the Village is immune from this lawsuit under WIS. STAT. § 893.80(4). *See **Pettit***, 171 Wis. 2d at 646 (we may decline to review issues supported by only general statements and unsupported by references to legal authority). "We cannot serve as both advocate and judge," *id.* at 647, and we will not develop legal arguments for Goeben, *see **State v. Jackson***, 229 Wis. 2d 328, 337, 600 N.W.2d 39 (Ct. App. 1999) ("A party must do more than simply toss a bunch of concepts into the air with the hope that either the [circuit] court or the opposing party will arrange them into viable and fact-supported legal theories."); *see also **Waushara County v. Graf***, 166 Wis. 2d 442, 452, 480 N.W.2d 16 (1992) ("While some leniency may be allowed, neither a [circuit] court nor a reviewing court has a duty to walk pro se litigants through the procedural requirements or to point them to the proper substantive law."); ***State***

*ex rel. Harris v. Smith*, 220 Wis. 2d 158, 164-65, 582 N.W.2d 131 (Ct. App. 1998) (the court's obligation to a pro se litigant does not include making an argument for the litigant). We reject Goeben's arguments on this basis, and we will therefore not consider them further.

*By the Court.*—Judgment affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)4.